## In re SING LEE.

## In re CHING JO.

### (District Court, W. D. Michigan. February 28, 1893.)

1. CHINESE—EXCLUSION—PROCEEDINGS—DUE PROCESS OF LAW.
   The provision of the Chinese exclusion act of May 5, 1892, for summary proceedings before a commissioner for the deportation of unauthorized persons, is not, by reason of its failure to allow a jury trial, open to the objection that it operates a denial of due process of law; and such proceedings do constitute due process of law, inasmuch as they are those customarily employed in cases of similar character.

2. SAME—EVIDENCE—BURDEN OF PROOF.
   The provision of the exclusion act of May 5, 1892, that the person charged is presumed to be guilty without the production of any evidence against him, and must establish his innocence by affirmative evidence, is not repugnant to any provision of the federal constitution, nor does it violate any common-law rule of evidence; for the facts constituting a defense are peculiarly within the knowledge of the party charged, and the burden is naturally upon him.

3. SAME—DENIAL OF EQUAL PROTECTION OF LAWS.
   These acts are in no wise repugnant to the fourteenth amendment to the federal constitution, as denying the Chinese the equal protection of the laws; for that amendment is restrictive of the action of the several states, and has no reference to legislation by congress.

4. SAME—NATURE OF PENALTY.
   The imprisonment provided for in the act of May 5, 1892, prior to deportation, is not a "punishment," in the sense of the criminal law, but is merely a means of detention.

5. SAME—HABEAS CORPUS—REVIEW—PRIOR RESIDENCE.
   On habeas corpus proceedings by Chinamen imprisoned by order of the commissioner, his findings of fact are not reviewable by the court; and hence it cannot be urged as ground for the writ that petitioners are exempt by reason of their residence here prior to the passage of the act of 1882.

On Application for Writ of Habeas Corpus. Denied.

D. E. Corbitt, for petitioners.

L. G. Palmer, Dist. Atty., and J. B. McMahon, Asst. Dist. Atty., for the United States.

SEVERENS, District Judge. The respondents in these cases, who are Chinese persons, being found at Petoskey, in this dis-

trict, were arrested and taken before United States Commissioner Call upon the charge of being and remaining within the United States in violation of the acts of congress excluding Chinese laborers who have entered this country since the passage of the principal act in 1882. Upon a summary proceeding, such as is provided for by those acts, the respondents were on the 7th day of February found guilty, and thereupon the commissioner sentenced them to imprisonment at hard labor for the period of 20 days in the county jail of Kent county, and adjudged that they be then removed to China. They were committed in accordance with that sentence, and on the 21st inst. applied to the district judge for a writ of habeas corpus, alleging that they were in custody under the aforesaid sentence and order of the commissioner, setting it out in full, and further alleging that they were not guilty, setting forth a fact which their counsel claims shows that they were not amenable to that proceeding, namely, that they were lawfully residents in the United States prior to the passage of the act of 1882, above referred to. The district attorney and his assistant, being notified, attended, and the grounds for the application for the writ were fully argued by counsel for the respective parties.

Those grounds, as presented by counsel for the respondents, and strenuously urged, are that the provisions of the recent act of May 5, 1892, prescribing the practice in such cases, and in pursuance of which the present conviction was had, do not provide due process of law, in that the proceeding is summary, and affords no opportunity for a trial by jury, nor even a regular hearing in any court of justice; that they fail to give to all persons the equal protection of the laws; that the statute of 1892 also declares that without any evidence the party is presumed to be guilty; and that he can only establish his innocence by affirmative testimony, showing his right,—which, it is alleged, is contrary to the fundamental principles imbedded in the constitution of the United States. They further claimed the right to prove that the commissioner had no jurisdiction by reason of the fact, as asserted, that the respondents were lawfully resident in the country before the passage of the act of 1882. No other objections are indicated by the petition or were presented in the argument.

To us who live far inland, and not so much subject to the evils intended to be guarded against by these exclusion acts, the lines laid down for their enforcement may seem hard, and because such summary dealing with the rights of persons are out of the common order to which we are accustomed, and are liable to produce injustice in many cases on account of their summary expedition and the presumption against the prisoners, they may seem severe; but if the power resides in congress to enact such provisions, the discretion whether it will do so rests in the lawmaking power, and the courts must presume it was exercised upon sufficient reasons.

In support of the several objections on behalf of the respondents enumerated above, it was insisted, first, that certain rights are guarantied by the constitution to all persons within the jurisdiction covered by it, among which is the right to a trial by a jury

of any fact upon the issue of which a man may be deprived of his liberty, and expelled from the country, and that this is what is required by due process of law. But it is erroneous to suppose that due process of law necessarily implies a trial by jury, or even a trial before a court organized according to common-law forms, and proceeding according to common-law methods. That is due process of law which is according to the method of legal proceedings employed in similar cases. Murray's Lessee v. Improvement Co., 18 How. 272. There are a great variety of special cases in which, on account of the necessity for prompt action, and because the regular course of proceedings in a court of justice by jury trial would involve delay, and contravene the object sought to be attained by the proceeding, it has always been customary to adopt a summary method. That is one of the principal reasons for the adoption of such proceedings, and there is ground for supposing it to have been a controlling one in the enactment in question. Other cases which might be instanced where summary methods are customary are where steps must be taken to prevent the spread of a pestilence or such mischiefs, and under treaty stipulations for the extradition of criminals. If the process is customary, it is that which is due. It is easy to see that the presence of this class of persons was regarded by congress as dangerous to our society and institutions, and that the general purpose of these exclusion acts is effectually and promptly to exclude their admission into the country, and to expel them if they have already gained a foothold.

It cannot be doubted that congress has power to prevent such persons, being aliens, from entering the country, and the reasons which support that power are equally cogent to authorize it to expel them after they have become residents. This right has been asserted at many periods of our history in diplomatic correspondence, and is in consonance with the doctrine of publicists who have written upon the subject as a branch of international law. Chae Chan Ping v. U. S., 130 U. S. 581, 9 Sup. Ct. Rep. 623. The case therefore falls within the range of that class where summary proceedings are admissible because customary.

Second. It is said that the right of the respondent is violated because a presumption is raised against him, and the burden laid upon him to prove his exemption. No distinct provision of the constitution is invoked to support this proposition, but it is said to be contrary to fundamental principles. The force of the objection, though it sounds plausible on its statement, is seen to grow weaker when we take into view the circumstances. The person brought before the commissioner is one of a class which, by the terms of the statute, is obnoxious to its operation. That must appear before the general jurisdiction can be exercised, and since, generally, that class is interdicted, he can only escape the common lot upon its appearing that he is not within the general condemnation. The means of showing this are presumably in his own control. It would be extremely inconvenient, and probably in most instances impracticable, for the government to bring proof of the negative fact that the respondent is not within the exemption.

Such circumstances are the basis of the rule of evidence which devolves the burden on the party who presumably has the best means of proving the fact. But, whatever the rule which by the common law would be applicable to trials, it cannot be affirmed that in such conditions the legislature cannot prescribe such a rule of evidence. It is worthy of suggestion in this connection that these persons who presumably know what this provision of the law affecting them is, may provide themselves with the certificate from the collector which would be evidence of their right, and, thus armed, could safely wander from their customary residence.

Third. In behalf of the respondents it is also said that this statute denies to them the equal protection of the law, and is therefore void, and section 1 of the fourteenth amendment is invoked; but to this it must be answered that the inhibitions of that section are laid upon the action of the several states, and have no reference to legislation by congress. The amendment does not even compel the state to award a trial by jury. Walker v. Sauvinet, 92 U. S. 90.

Fourth. In respect to the allegations in the petitions that the respondents are not liable to the proceedings which the commissioner has adjudged to be taken against them because they are exempt by reason of their residence in the United States prior to the passage of the law of 1882, it is clear that I cannot, on this application, or on the return to the writ if one should be awarded, review the finding of the commissioner. In re Luis Oteiza y Cortes, 136 U. S. 330, 10 Sup. Ct. Rep. 1031; Stevens v. Fuller, 136 U. S. 468, 10 Sup. Ct. Rep. 911; Horner v. U. S., 143 U. S. 207, 12 Sup. Ct. Rep. 407. The question whether the respondent was subject to the proceedings was one within the jurisdiction of the commissioner. Horner v. U. S., 143 U. S. 207, 215, 12 Sup. Ct. Rep. 407. Under section 13 of the act of 1884 it may be that an appeal could have been taken from that finding. Whether that section survives the enactment of the act of 1892 it is unnecessary to determine. No appeal was taken, and the time therefor had expired before the present application. The foregoing conclusions cover all the grounds stated in the application or urged by counsel, upon the most liberal interpretation.

If the view taken of the statute of 1892 by Judge Billings in U. S. v. Hing Quong Chow, 53 Fed. Rep. 233, (in which he holds that it should be construed, not as creating a criminal offense, but as prescribing merely a method of removal, and requiring certain detention as an incident,) is correct,—as I am inclined to think it is,—the sentence in this case, so far as imprisonment is concerned, should have been that the respondent should be imprisoned until he should be deported, but not longer than one year. The sixth amendment to the constitution secures to the accused person in all criminal proceedings the right to a trial by jury, and to like effect is the third paragraph of the second section of article 3. This statute does not make provision for such a trial. It is clear, therefore, that the statute in question cannot be construed as creating a criminal offense, or as declaring a punishment appropriate thereto, without rendering it obnoxious to the sixth amendment. It is a rule of construction that, if a statute is upon one construction in conflict with the constitution, and

upon another is not so, the latter construction, if a fairly possible one, should be adopted, even though it seems the less natural meaning of the terms employed. It is necessary, therefore, to hold that the imprisonment provided for in the act is not a punishment, but a mere means of detention. The sentence in this case was that the respondent should be imprisoned for 20 days, and then removed, etc. In my opinion, the petitioners would be entitled to the writ for the purpose of relief from that portion of the sentence which prescribes a definite term of imprisonment, but that term has expired. The other part of the commissioner's order was, nevertheless, proper upon his finding of the fact, and is probably valid, notwithstanding the irregular part. These applications allege that the respondents are in the custody of the marshal, the theory seeming to be that the custody of the jailer has been subordinate to that of the marshal. From some indications outside the record, I am anxious lest these proceedings operate unjustly, in a large sense, though I have no doubt the commissioner acted upon the best light he had before him. These respondents (there are two of them in like plight, who make separate applications) are mere youths, arrested at a considerable distance from their residence, and are condemned to be transported away from the relatives and friends they may have in this country, and to be landed anywhere in a wide empire, —it may be 1,000 miles from the place which they left in their childhood; but I can see no way for the court to avoid the danger of what may seem to be a wrong, consistently with law, unless the district attorney, in view of the irregularity of the proceedings, will consent that the writs may go, and thereupon the prisoners may be discharged, to the end that new proceedings may be instituted, when the respondents may have more ample opportunity for presenting their defense. It must be admitted that this might seem a rather free exercise of authority, but it would have the quality of mercy. If such consent is not given, inasmuch as the marshal has the custody of the prisoners for the purpose of deportation, the writs must be denied.

Upon the reading of the foregoing opinion, the district attorney announced that he did not feel at liberty to consent to the allowance of the writs, and thereupon the denial of the writs is made absolute.