## In re LI SING.

(Circuit Court of Appeals, Second Circuit. April 7, 1898.)

No. 93.

1. HABEAS CORPUS—EFFECT OF WRIT.
   The questions which can be presented upon the writ of habeas corpus to review the decision of a United States commissioner relate to the jurisdiction of the commissioner and the legality of his order.

2. CHINESE—ACT OF SEPTEMBER, 1888.
   Section 12 of the act of September 13, 1888, making the decisions of collectors of customs as to the right of Chinese persons to enter the United States final, in all cases, unless reversed on appeal to the secretary of the treasury, even if it ever went into effect, is no longer so since the act of August 18, 1894.

3. SAME—ACT OF 1894—DECISION OF COLLECTOR OF CUSTOMS.
   The provision of the act of August 18, 1894, making the decisions of collectors of customs, when adverse to the right of Chinese persons to enter the United States, reviewable by the secretary of the treasury alone, does not make such decisions conclusive upon the federal courts when favorable to such right.

4. CONSTITUTIONAL LAW—RULE OF EVIDENCE.
   Section 3 of the act of May 5, 1892, requiring Chinese persons arrested under the act to establish by affirmative proof their right to remain in the United States, is constitutional.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In June, 1893, Li Sing, then a resident of Newark, N. J., returned to China, and took with him a certificate issued by the imperial government of China at its consulate at New York, and signed by its consul, that he was permitted to return to the United States, and was entitled to do so, and which furthermore styled him a "wholesale grocer." This certificate was viséed in Hong Kong by the United States consul on June 27, 1896, when Li Sing was about to return to this country. He thereafter returned by the way of Canada, and presented the certificate to the United States collector of customs at Malone, N. Y., who canceled it on August 28, 1896, and permitted him to enter the country. On January 6, 1897, the United States officer who is called the "Chinese Inspector for the Port of New York" represented, in writing and under oath, to John A. Shields, Esq., United States commissioner for the Southern district of New York, that Li Sing had unlawfully entered the United States, was unlawfully within that district, and that he was, and had been for many years, a Chinese laborer, whereupon he was brought before the commissioner for examination. The counsel for Li Sing insisted before the commissioner that, by the action of the collector of customs at Malone, the question of the Chinaman's right to be and remain in this country was res adjudicata, and, furthermore, that he was a merchant. Testimony to this effect was given by Chinese witnesses exclusively, which was received by the commissioner, notwithstanding the objection of the attorney for the United States. The commissioner found upon all the evidence that Li Sing was at the time of the examination a Chinese laborer, was such at the time he departed for China, and for a term of years prior thereto, and was such after his return from China in August, 1896; and simply ordered his deportation, and did not order imprisonment, as a punishment or penalty. A writ of habeas corpus and a writ of certiorari were thereupon allowed by the circuit court for the Southern district of New York, upon Li Sing's petition; and after a hearing the writ of habeas corpus was dismissed, and the relator was remanded to the custody of the United States marshal for deportation. This appeal was taken by the relator from the order of the circuit court.

Wm. C. Beecher, for relator.

Max Kohler, Asst. U. S. Atty.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). The questions which can be presented upon the writ of habeas corpus relate to the jurisdiction of the commissioner, and the legality of the order of deportation. It is claimed that he had no jurisdiction, because the action of the collector at Malone was a finality, and that the relator cannot be detained, because the provisions of the third section of the act of May 5, 1892 (27 Stat. 25), under which his examination was conducted, were in violation of the constitution. The proceedings for Li Sing's deportation were instituted by Inspector Scharf, under section 12 of the act of May 6, 1882, as amended by the act of July 5, 1884 (23 Stat. 115), which provides that:

"No Chinese person shall be permitted to enter the United States by land, without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came."

The required certificate in regard to persons not laborers was specified in the sixth section of the same amended act; was to be obtained from the Chinese government by every Chinese person, other than a laborer, who was about to come to the United States; and was for the purpose of identifying the person, and evidencing the permission of the government for his departure. The section provided that this certificate—

"Shall be produced to the collector of customs of the port in the district in the United States at which the person named therein shall arrive, and afterward produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disapproved by the United States authorities."

It is not now contended that, under sections 6 and 12, the opinion of the collector of customs in regard to the character of the certificate was final. "On the contrary, the implication of section 12 is strongly in favor of the view that the jurisdiction of the courts of the United States in the premises was not intended to be interfered with." U. S. v. Jung Ah Lung, 124 U. S. 621, 629, 8 Sup. Ct. 663. Section 12 of the act of September 13, 1888 (25 Stat. 476), is the one upon which the relator relies. This act was passed to take effect, as a whole, upon the ratification of a treaty then pending between the United States and the emperor of China, which was never ratified. Section 12 of this act provided that:

"The collector shall in person decide all questions in dispute with regard to the right of any Chinese person to enter the United States and his decision shall be subject to review by the secretary of the treasury and not otherwise."

If this section had gone into effect, and had continued to be in effect until August 27, 1896, when the collector at Malone acted in

86 F.—57

the matter, his decision would have been final. Nishimura Ekiu v. U. S., 142 U. S. 651, 660, 12 Sup. Ct. 336. The treaty not having been ratified, a new act, of October 1, 1888 (25 Stat. 504), was passed, which, as stated in Wan Shing v. U. S., 140 U. S. 424, 11 Sup. Ct. 729—

"Declared that from and after its passage it should be unlawful for any Chinese laborer, who at any time before had been or was then, or might thereafter be, a resident within the United States, and who had departed or might depart therefrom, and should not have returned before its passage, to remain in the United States. And it further declared that no certificates of identity, under which, by the act of May 6, 1882, Chinese laborers departing from the country were allowed to return, should thereafter be issued; and it annulled every certificate of the kind which had been previously issued, and provided that no Chinese laborer should be permitted to enter the United States by virtue thereof."

It will be noticed that section 4 of the statute of May 5, 1882, had provided for certificates of identity which could be given to Chinese laborers departing from this country and intending to return, and that this new statute of 1888 prohibited the future issuance of such certificate to the laboring class, so that:

"The result of the legislation respecting the Chinese would seem to be this: That no laborers of that race shall hereafter be permitted to enter the United States, or even to return after having departed from the country, though they may have previously resided therein, and have left with a view of returning; and that all other persons of that race, except those connected with the diplomatic service, must produce a certificate from the authorities of the Chinese government, or of such other foreign government as they may at the time be subjects of, showing that they are not laborers, and have the permission of that government to enter the United States, which certificate is to be viséed by a representative of the government of the United States." Wan Shing v. U. S., supra.

Section 3 of the act of October 1, 1888, provided that all the duties prescribed and powers conferred by section 12 of the act of May 6, 1882, already referred to, were made applicable to the provisions of the new act. It would seem from the contrariety between the acts of September and of October, 1888, that section 12 of the act of September 13, 1888, was not regarded as ever having gone into effect. U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271. We intend to express no opinion in regard to section 13 of that act. The question is no longer a living one, for subsequently, in the act of August 18, 1894, c. 301 (28 Stat. 390), congress provided that:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the secretary of the treasury."

This makes the decision a final adjudication only when adverse to admission. If the immigration or customs officer decides to allow the immigrant to enter, such decision has no more force, as a controlling adjudication, when the question of right to be or remain in the United States comes before court or commissioner, than it had under section 9 of the act of 1882, as amended in 1884, which was before the supreme court in U. S. v. Jung Ah Lung, su-

pra. In re Li Foon, 80 Fed. 881; Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967.

The relator asserts the unconstitutionality of the provisions of section 3 of the act of May 5, 1892, supra, which required a Chinese person who was arrested under the act to establish by affirmative proof his lawful right to remain in the United States, and of the provisions of section 2 of the act of November 3, 1893 (28 Stat. 7), which required a Chinaman to establish certain facts by the testimony of two credible witnesses, other than Chinese, upon an application for entrance into the United States on the ground that he was formerly a merchant in this country. It appears from the return to the writ of certiorari that all the witnesses for the relator were Chinese, but that the commissioner excluded nothing, and decided, upon the entire conflicting testimony, that the defendant was a Chinese laborer. The question of the constitutionality of section 2 of the act of 1893 does not, therefore, arise upon this record. The question of the constitutionality of provisions akin to those in section 3 of the act of May 5, 1892, in regard to requirements of proof, was settled in Fong Yue Ting v. U. S., 149 U. S. 698, 729, 13 Sup. Ct. 1016. The opinions of the supreme court in Wan Shing v. U. S., 140 U. S. 424, 11 Sup. Ct. 729, and in Wong Wing v. U. S., 163 U. S. 228, 16 Sup. Ct. 977, are also suggestive upon the extent of the power of congress to make provisions merely for the deportation of aliens who are deemed to be unlawfully in the country. The order of the circuit court is affirmed.