UNITED STATES v. CHUN HOY.

(Circuit Court of Appeals, Ninth Circuit.    October 7, 1901.)

No. 687.

1. CHINESE EXCLUSION—PROCEEDINGS FOR DEPORTATION—BURDEN OF PROOF.
   The provision of section 3 of the Chinese exclusion act of May 5, 1892 (27 Stat. 25), placing the burden of proof upon a Chinese person or person of Chinese descent, arrested under the provisions of the act, to establish his right to remain in the United States, is within the power of congress, and valid, and, unless such right affirmatively appears from the evidence, it is the duty of the court to order the defendant deported.

2. SAME—CLAIM OF NATIVITY—EVIDENCE CONSIDERED.
   Evidence *held* insufficient to sustain the claim of a person of the Chinese race, arrested for being unlawfully within the territory of Hawaii, that he was a native of such islands.[1]

Appeal from the District Court of the United States for the Territory of Hawaii.

Lorrin Andrews, F. H. Gould, and Samuel F. Chillingworth, for appellant.

Marshall B. Woodworth, for the United States.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This is an appeal from a judgment of the district court of the United States for the territory of Hawaii, directing the deportation of the appellant, Chun Hoy, back to China, from which country he was permitted to land in Hawaii in August, 1900, by the collector of customs for that territory. Shortly thereafter a criminal information, duly verified, was filed against Hoy, charging him with being unlawfully in the United States, upon which the judge of the court below directed that he be apprehended and brought before him, pursuant to the provisions of an act of congress entitled "An act to prohibit the coming of Chinese persons into the United States," approved May 5, 1892 (27 Stat. [1891, 1892] 25). The defendant appeared with counsel, and the trial resulted in the judgment from which the appeal is taken. The contention on his

---

[1] Citizenship of Chinese, see notes to Gee Fook Sing v. U. S., 1 C. C. A. 212; Lee Sing Far v. U. S., 5 C. C. A. 332.

behalf is that he was born in the Hawaiian Islands, and when 1 year old was taken by his mother to China, where he remained for 17 years, and then came back. The only evidence introduced on the trial was introduced on behalf of the United States by its attorney. The defendant to the proceeding introduced no proof, but contended in the court below, as he does here, that the proof introduced on the part of the government shows him to be entitled to his discharge. That proof consisted of the testimony of a Chinese witness named Yee Fook, and of that of E. R. Stackable, the collector of customs for the territory of Hawaii; a photograph of the defendant; and the following certificate:

"I, Chun Fook, a resident of Honolulu, H. I., hereby state that my son, Chun Hoy, now 18 years of age, residing in China with his mother, Kam She, was born in Honolulu, Hawaiian Islands. He was taken to China by his mother, 17 years ago, and it is my wish that he now return to Honolulu. This statement is therefore made for the purpose of facilitating his landing on his return to Honolulu, H. I.

"[Chinese Signature.]                                    [i. e. Chun Fook.]

"Subscribed and sworn to before me this 28th day of May, A. D. 1900.
    "[Seal.]           N. Fernandez, Notary Public, Hawaiian Islands.

"We, Lam Wah Lin and Kam Shai, residents of Honolulu, H. I., hereby state that we are well acquainted with Chun Fook and his family, and of our own knowledge know that his son, Chun Hoy, was born in Honolulu, Hawaiian Islands.

"[Chinese Signature.]                                    [i. e. Lam Wah Lin.]
"[Chinese Signature.]                                    [i. e. Kam Shai.]

"Subscribed and sworn to before me this 28th day of May, A. D. 1900.
    "[Seal.]                                              N. Fernandez,
                  "1st Jud. Circuit, Notary Public, Hawaiian Islands."

The testimony of Yee Fook is to the effect that by the same steamer that brought the defendant and another Chinese boy of about the same age, named Lau Koon Yau (and who, by the stipulation of counsel, was tried at the same time upon similar proceedings against him), to Honolulu he received a letter from a friend in China, inclosing photographs of the two boys, and asking him to meet them on their arrival at Honolulu, which he said he did, and recognized them from the photographs sent him, and that when the defendant landed he went to join his relatives. The testimony of Stackable is to the effect that, as collector of customs, he has charge of the admission of Chinese immigrants to the islands, and that at the time in question one Joshua K. Brown was the Chinese inspector under him, and one Lau Sam Chau was the Chinese interpreter. He produced a memorandum book used upon the examination of such immigrants, and, turning to the record there made upon the admission of the appellant, said that a part of it was in the handwriting of the interpreter (who had since been suspended in connection with these two boys), and the balance of it in the handwriting of Brown. The record shows that the witness was then questioned, and answered as follows:

"Q. Be kind enough to show the court the handwriting of Joshua K. Brown on the record. A. 'Chun Hoy,'—I give you the word,—'year 18 born, in Honolulu, born Hawaiian Islands. Went away one year old, with mother. Had a slight dark mark three years ago. Father, Chin Tung, in Honolulu;

mother, Kum Shee and Bin Tow Man Long Heong Sai; had two brothers, aged 20 and and 22, respectively, both in China,—one Ton Hee, aged 20, and the other one Ghun Tong, aged 22.' That is the report made by J. K. Brown, and it was made at the examination of these two boys. Q. And you acted upon that report? A. I acted upon it. Q. And landed them? A. I admitted them. Q. Did the father send paper for one to come, and sent passage money for him to come, and a relative guarantied the passage money? A. The steamship company demand any one. Where there is any question, they have to pay a double passage money, so that there is no question about returning them. They are paid for in advance. That is what is meant by this special passage. This portion which I have read, so far as written in the Chinese interpreter's handwriting. Then Mr. Brown takes it up. 'Chun Fook, father, confirms above statement in every particular.' This must be one of the grounds of the admission. 'August 25th, 1900, Joshua K. Brown, Chinese Inspector,'—for my special benefit, in blue pencil, 'August, 1900.' Not signed by me where they are admitted. Any question arising in those, my instructions, are that I must sign them."

The witness further stated that upon the report of Brown, and upon the certificate as to the place of the appellant's birth, hereinbefore set out, he permitted him to be landed.

We are unable to agree with counsel for the appellant in their contention that there was no basis for the judgment of the court below. On the contrary, we think there were several circumstances well calculated to make the court distrust the claim that the appellant was born in the Hawaiian Islands. In the first place, Chun Fook is claimed to be his father, and he it was who, on the 28th day of May, 1900, subscribed and swore to the certificate as to his birth in Honolulu, about 18 years before, and that one year thereafter he was taken to China by his mother. This father, according to the record, was in Honolulu when the appellant arrived there; yet it does not appear that he went to meet him, or was notified that he was to arrive, but that a total stranger—the witness Ye Fook—was notified of his intended arrival by some friend of his in China, who sent the appellant's picture, with the request that he should meet him at the ship and look out for him. These facts, we think, were quite enough to shake the confidence of the court in the pretensions put forward on behalf of the appellant. Another suspicious circumstance is the fact that on the same day that Chun Fook subscribed and swore to the certificate in respect to the appellant, to wit, May 28, 1900, Lau Koon Yau subscribed and swore to a precisely similar certificate with respect to Lau King, the other boy mentioned, giving his age also as 18 years, and as having been "taken to China by his mother 17 years ago."

The third section of the act of congress of May 5, 1892, is as follows:

"That any Chinese person, or person of Chinese descent, arrested under the provisions of this act, or the acts hereby extended, shall be adjudged to be unlawfully within the United States, unless such person shall establish by affirmative proof, to the satisfaction of such justice, judge, or commissioner, his lawful right to remain in the United States."

In speaking of this section, it was said in the case of U. S. v. Wong Dep Ken (D. C.) 57 Fed. 206, 208:

"No one questions the power of congress to prohibit the coming into this country of any class of foreigners deemed prejudicial to the interests of our

people. Against the coming into the country of Chinese laborers, congress has been legislating for years. The reason for such legislation is an old story, and need not be repeated. But, notwithstanding the enactments upon the subject, the laws have been evaded in many ways. By false testimony and concocted evidence the courts have been imposed upon in cases almost without number, and by sea and land the prohibited class in large numbers have been smuggled into the country in one way or another. To prevent all of this, and give effect to its laws upon the subject, as far as possible, congress deemed it wise, by the provision in question, to put the burden of proof of his lawful right to remain in the United States on the Chinese person or person of Chinese descent charged with being unlawfully within their borders. To those not residents of, and not familiar with, the Pacific slope, and not so much subject to the evils intended to be guarded against by the exclusion acts, 'the lines laid down for their enforcement may,' as appropriately and well said by Judge Severens in Re Sing Lee (D. C.) 54 Fed. 334, 'seem hard, and because such summary dealings with the rights of persons are out of the common order to which we are accustomed, and are liable to produce injustice in many cases on account of their summary expedition and the presumption against the prisoners, they may seem severe, but, if the power resides in congress to enact such provisions, the discretion whether it will do so rests in the lawmaking power, and the courts must presume it was exercised upon sufficient reasons.' In respect to the provision of the Geary act putting the burden of proof on those coming within the class thus interdicted, I agree with Judge Severens, in the case cited, that there is not only nothing in it violative of the provisions of the constitution of the United States, but for the reasons given by him, and in view of the circumstances already referred to and of others that may be suggested, that the provision in question is not unreasonable. He says: 'The person brought before the commissioner is one of a class which, by the terms of the statute, is obnoxious to its operation. That must appear before the general jurisdiction can be exercised, and since, generally, that class is interdicted, he can only escape the common lot upon its appearing that he is not within the general condemnation. The means of showing this are presumably in his own control. It would be extremely inconvenient, and probably in most instances impracticable, for the government to bring proof of the negative fact that the respondent is not within the exemption. Such circumstances are the basis of the rule of evidence which devolves the burden on the party who presumably has the best means of proving the fact; but, whatever the rule which by the common law would be applicable to trials, it cannot be affirmed that in such conditions the legislature cannot prescribe such a rule of evidence.' "

We agree with what was there said. The judgment is affirmed.