UNITED STATES v. CHIN KEN.

(District Court, N. D. New York. November 22, 1910.)

ALIENS (§ 32*)—PROCEEDINGS FOR DEPORTATION OF CHINESE—BURDEN OF PROOF.

On proof that a defendant, arrested for deportation as a Chinese laborer unlawfully in the United States, is a Chinese person and a laborer, the burden rests on him to show his right to remain in the United States, and he gains no rights by standing mute, but, on the contrary, such conduct justifies his being held strictly to his technical rights.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Arrest and detention under the Chinese exclusion laws for deportation of Chin Ken, Chin Kit, Toy Sing, and Yew Fung. Order of deportation in each case.

Geo. B. Curtiss, U. S. Atty.

Defendants, pro se; one B. W. Berry claiming to represent and asking to appear for Chin Ken and Chin Kit.

RAY, District Judge.   There was a separate complaint, warrant, and examination in each of these cases, and there will be a separate order and judgment in each.

These persons above named, and who give their names as Chin Ken, Chin Kit, Toy Sing, and Yew Fung, respectively, were found loitering near the depot at Malone, Franklin county, N. Y., about 16 miles from the Canadian border, on the evening of November 10, 1910, without baggage or business, so far as can be ascertained, and thereupon arrested and taken to the Franklin county jail at Malone, and on the morning of the 12th were brought before me and complaints made in writing that they are Chinese persons, laborers, aliens, and found and being unlawfully in the United States in violation of the Chinese exclusion laws.   Deportation is sought by the United States.

When brought before me, after issue and service of warrant, Mr. B. W. Berry, an attorney at Malone, appeared also, and, when the case of Chin Ken was called, claimed to appear for him.   His right and authority to appear for Chin Ken was challenged by Hon. Geo. B. Curtiss, United States attorney for the Northern District of New York, who was present representing the United States.   Mr. Berry said he was willing to be sworn and was sworn in the presence of the defendant Chin Ken, who gave no sign of recognition, and who on three different occasions has refused to claim Berry as his attorney or counsel, and who finally, November 21, 1910, states he does not want an attorney or lawyer now, but later.   He speaks and understands English.   Mr. Berry claims that he was in the jail the evening of the arrest of these four defendants to see another person, a Chinese person held on the charge of being unlawfully in the United States, and that these defendants came into the room, and that this fifth person asked this defendant if he wanted Berry to appear for him, and that defendant said "Yes."   No interpreter was present, but Berry says this fifth person spoke English to that extent. Berry had been informed there were four more Chinese in the jail before they came into the room where Berry was.   He says, in effect, he then telegraphed to New York the names of these four defendants, and told his partner, R. M. Moore, these defendants, giving their names, were arrested, and asking if he should defend them, and Moore answered "Yes."   He says he did not ascertain the cause of their arrest or the charge against them, but assumed it was for being unlawfully in the United States.   Mr. Moore is not an attorney of this court.

Mr. Wallace, an experienced Chinese interpreter of good standing, was sworn as interpreter, and Chin Ken was examined as was Chin Kit, in the presence of Berry, and each asked if he had any lawyer or attorney; if he desired to send for one; told if he did to make it known; that he had a right to send for one or employ one; that he had a right to be represented by counsel, if he desired to be represented by counsel.   Also, later if he had employed an attorney or lawyer, and was again informed of his right to be represented by an attorney and of his right to produce witnesses.   He was also asked, in the presence of Mr. Berry, if he

knew any one in the room, and if he had had any talk with any one in the room. To all questions except giving his name he refused to answer and stood mute. Proof was taken that he understood what was said. It finally appears that he can and does speak and understand the English language to quite an extent. It was perfectly evident the defendant did not know Berry, and I find as a fact that Berry had not been employed by the defendant, and was unknown to him. The same course was taken with Chin Kit in Berry's presence, and Chin Kit stood mute. Berry was not present at the examinations of Toy Sing and Yew Fung, having left the court. After the examination of the defendants, having explained to each the charge against him and his right to witnesses, counsel, etc., and taking evidence, the cases were held open to November 14th, and then to November 21st, to enable the defendants to produce witnesses, and obtain counsel if they desired so to do. No witnesses have been produced, and no counsel has opposed. Chin Ken speaks English, and can understand it. A further examination was held November 21, 1910, and Chin Ken said in the presence of all the defendants he wanted no lawyer now, by and by, and that he had not had a lawyer. They have written and sent letters and received letters. Proof was taken that the defendants are Chinese persons and laborers. The burden was then on them respectively to prove they are citizens of the United States or for some reason entitled to be and remain in the United States. Sections 2, 3, Act May 5, 1892, c. 60, 27 Stat. 25 (U. S. Comp. St. 1901, pp. 1319, 1320); Ah How v. United States, 193 U. S. 65, 76, 24 Sup. Ct. 357, 48 L. Ed. 619; In re Ching Jo (D. C.) 54 Fed. 334; United States v. Wong Dep Ken (D. C.) 57 Fed. 206; In re Li Sing, 86 Fed. 896, 30 C. C. A. 451; United States v. Lung Hong (D. C.) 105 Fed. 188; United States v. Chun Hoy, 111 Fed. 899, 50 C. C. A. 57; United States v. Sing Lee (D. C.) 125 Fed. 627; Lee Yue v. United States, 133 Fed. 45, 66 C. C. A. 178; Low Foon Yin v. United States Immigration Com'r et al., 145 Fed. 791, 76 C. C. A. 355; Toy Tong v. United States, 146 Fed. 343, 76 C. C. A. 621; Lee Yuen Sue v. United States, 146 Fed. 670, 77 C. C. A. 96; United States v. Hoy Way (D. C.) 156 Fed. 247; Ex parte Lung Wing Wun, 161 Fed. 211.

No rights are gained by standing mute. United States v. Sing Tuck et al., 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed. 917, where as here the defendant stood mute except in giving name. "They were offered a way to prove their alleged citizenship and to be set at large, which would be sufficient for most people who had a case and which would relieve the courts. If they saw fit to refuse that way, they properly were held down strictly to their technical rights," said the court. Also:

"On the contrary, the parties were told that, if they could produce two witnesses who knew that they had the right to enter, their testimony would be taken and carefully considered, and various other attempts were made to induce the suggestion of any evidence to help establish the parties' case, but they stood mute."

Here the defendants have been given more than one opportunity and a week's time to assert they had counsel or witnesses or both, or

to obtain counsel or witnesses or make any statement they desired to make. They stand mute. They have written letters to persons which have been duly mailed by the sheriff, but there is no appearance. They have also received letters. They have been requested to produce papers showing their right to be here, but produce none. Chin Kit had a head tax certificate issued to one Chan Kut by the Dominion of Canada showing that such a person had paid a head tax June 28, 1910, in that Dominion, and that he landed at Vancouver, B. C., June 25, 1910, from Empress of Japan, a steamer running between China and Vancouver. Chin Ken had a certificate signed by United States collector of internal revenues at Portsmouth, N. H., April 11, 1893, showing that one Chin Tia You, a laborer, aged 16 years, was registered at that time. Evidently this is not the same person. If Chin Kit is Chan Kut, it shows him recently in Canada. Chin Ken makes no claim he is the person named in the internal revenue collector's certificate having a photograph attached. Alien Chinese laborers, coming from China to the United States, are now crossing the Canadian border into the United States in several different modes. Some come in the night, some by day driven to a point near the border line, and then walking in, and some have come packed with hay bales in freight cars. They are coming in bunches of from 3 to 15. As a rule they stand mute and are represented by the same attorney who opportunely turns up at the right time, and who, it is stated, is frequently seen in Canada at about the time the Chinese leave and occasionally on the same train with them. When arrested, communication is had with a Chinese person in Boston, New York, or Brooklyn, and then Chinese witnesses are produced to testify that the detained persons were born in the United States, etc. In most cases it is demonstrated that the case is a fraudulent one. "Coaching" is sure to present a fairly good case, but, in the absence of this process, there is no pretense of a case for admission. The safest way is to remain mute. In my judgment Chinese persons born in the United States have no reason to prevaricate, remain mute, or avoid the usual and legal modes of coming into the United States. To my mind clandestine or surreptitious modes of coming and a refusal to speak are badges of illegality, and, to an extent, are admission of want of right to enter. Chin Ken and Chin Kit have been requested to explain their possession of the papers found with or produced by them, but refuse to do so. Chin Kit speaks and understands some English. I can see no good reason why a citizen of the United States should voluntarily enter his native country surreptitiously, and then stand mute when his right to be here is in question. And I can see no justification for aiding and abetting this course of proceeding, whether done by attorneys of this court or others. It does not meet my approval, and cannot until pronounced to be in accordance with the law of the land and its approved mode of procedure by a competent tribunal, when I will lend it all the aid and encouragement its merits demand as it will be my duty to do. And I may add that combinations to illegally import Chinese are as obnoxious as those to control trade and commerce and defraud the rev-

enue laws, and should meet equal disfavor. In my opinion the Chinese exclusion laws contemplate and plainly provide that the burden shall be and is on all Chinese persons to present legal evidence of their right to be and remain in the United States when questioned, and that a failure to do so justifies a deportation to China or to the country of which they show themselves to be subjects.

There will be an order or judgment of deportation to China in each case.