## UNITED STATES v. LOUIE LEE.

(District Court, W. D. Tennessee, W. D. February 1, 1911.)

### No. 1,160.

1. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—APPEAL—EFFECT.
   An appeal from an order of deportation suspends execution until after determination of the appeal.
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—APPEAL—TRIAL ON APPEAL—HEARING DE NOVO.
   On appeal from a United States commissioner's deportation order in exclusion proceedings, the case is to be heard de novo.
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—CHINESE DEPORTATION PROCEEDINGS—NATIONALITY OF DEFENDANT—PROOF—AFFIDAVIT.
   An affidavit made by a United States Chinese inspector charging defendant with being a Chinese laborer unlawfully within the United States without a certificate of registration, on which a warrant was issued for defendant's arrest, was not evidence at the hearing to prove that defendant was a Chinese person.
   [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

4. ALIENS (§ 32*)—EXCLUSION—CHINESE PERSONS—PROOF.
   Act May 5, 1892, c. 60, § 3, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1320), provides that any Chinese person, or person of Chinese descent, arrested

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under the act, or acts extended, shall be adjudged to be unlawfully within the United States unless he shall establish by affirmative proof his lawful right to remain in the United States, and section 6, as amended by Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1320), required all Chinese laborers within the United States, who were entitled to remain before the passage of the act, to obtain a certificate of residence. *Held,* that the burden was on the United States, in proceedings to deport a Chinese person as unlawfully within the United States, to show by affirmative proof that defendant was a Chinese person.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

5. ALIENS (§ 32*)—CHINESE PERSONS—DEPORTATION—PROOF OF NATIONALITY.
Where a person named Louie Lee was arrested on complaint of a United States Chinese inspector in deportation proceedings, and on appearing in court was attired in the ordinary street apparel of an American gentleman, with his hair worn as an American and with nothing to indicate that he was a Chinese except his color and features, which were more or less common to all Mongolians, his name not being distinctively Chinese, his appearance was insufficient to establish that he was a Chinese person within the exclusion acts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. § 32.*]

6. ALIENS (§ 32*)—CHINESE—EXCLUSION PROCEEDINGS—MOTION TO DISMISS.
Where the government rested in Chinese deportation proceedings without introducing any evidence that defendant was a Chinese person, whereupon defendant moved to dismiss the proceedings and for his discharge, he was entitled to have the motion determined on the record as it stood when the motion was made, and hence the government's application for permission then to introduce evidence to prove the fact was denied.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Chinese deportation proceedings by the United States of America against Louie Lee. From the Commissioner's order of deportation, defendant appeals. Reversed, and defendant discharged.

Casey Todd, U. S. Dist. Atty.

C. G. Bond and Frank S. Elgin, for defendant.

McCALL, District Judge. On the 30th day of November, 1910, S. L. Whitfield, a United States Chinese inspector, made a complaint in writing under oath before A. G. Mathews, United States commissioner, that one Louie Lee, yeoman, of Madison county, Tenn., and within this district, on the 30th day of November, 1910, "being a Chinese laborer, was found unlawfully in the United States, without a certificate of registration, under the act of May 5, A. D. 1892 [Act May 5, 1892, c. 60, § 6, 27 Stat. 25] as amended by the act of November 3, A. D. 1893 [Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1320)], wherefore, and for the cause mentioned in said information," it is prayed that "said Louie Lee, being unlawfully within the United States, be deported from the United States to the place from which he came."

On the same day, the United States commissioner issued a warrant, directed to the marshal of the Western district of Tennessee, commanding him to apprehend the said Louie Lee, and forthwith bring

his body before the said commissioner, or some other commissioner, to answer the charge and be dealt with as the law directs in such cases.

Indorsed upon the warrant is the following:

"On this day, the within named Louie Lee was brought before me for hearing upon the within charge of being a Chinese laborer unlawfully within the United States. The said Louie Lee denied being unlawfully within the United States, but failed to prove that he was not so unlawfully therein, and, from the further proof submitted by the United States, I find that said Louie Lee is unlawfully within the United States, and he is hereby ordered deported from same to the country from which he came to the United States. This, December 1, A. D. 1910.

"[Signed]   A. G. Mathews, United States Commissioner."

On the 3d day of December, 1910, the said Louie Lee prayed an appeal, from the judgment of the commissioner, to the judge of the United States District Court from said judgment of deportation, "to the end that said judgment may be annulled and vacated, and your petitioner may be restored to his rights and liberties as provided by law, and asks the honorable commissioner to grant said appeal." The appeal was granted on the same day.

The effect of this appeal was to suspend the judgment of the United States commissioner, and the case is before me to be heard de novo.

If any evidence was introduced before the commissioner, the same was not certified to this court. On the other hand, it was agreed in open court that no evidence of any character was offered or heard before the commissioner.

When the case was called to be heard in this court, the following occurred, in substance: The district attorney stated that a warrant was issued, charging that Louie Lee was a Chinese laborer, and being unlawfully within the United States. After reading the affidavit on which the warrant of arrest was based, he stated that he had no other evidence to offer, unless it should become necessary to offer evidence in rebuttal, after the defendant had closed his proof. Thereupon counsel for the defendant moved the court to discharge the defendant, upon the ground that there was no evidence introduced by the government to support the charge made in the warrant to the effect that the defendant was a Chinese person.

The district attorney contended that the act of Congress under which the proceeding was brought only required of the government to cause the alleged Chinese person to be arrested and brought before the court, and that the burden is upon such person to show that he is lawfully within the United States, and that, if the defendant introduced no evidence, that a judgment of deportation should be pronounced by the court.

Upon the other hand, the defendant's counsel contended that the burden was upon the government to prove that the defendant was a Chinese person, and then the burden shifted to the defendant, in order to avoid a judgment of deportation, to show that he was lawfully here.

Section 3 of the act of May 5, 1892, provides:

"That any Chinese person, or persons of Chinese descent, arrested under the provisions of this act, or the acts hereby extended, shall be adjudged to

be unlawfully within the United States, unless the person shall establish by affirmative proof, to the satisfaction of such justice, judge or commissioner, his lawful right to remain in the United States."

Section 6 of said act, as amended by the act of November 3, 1893, provides that all Chinese laborers within the limits of the United States, who are entitled to remain in the United States before the passage of the act, shall apply to the collector of internal revenue for a certificate of residence—

"and any Chinese laborer within the limits of the United States who shall neglect, fail or refuse to comply with the provisions of this act, and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States, without such certificate or residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by any * * * United States * * * marshal, or his deputies, and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, * * * unless he shall establish clearly to the satisfaction of such judge that by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate, and to the satisfaction of said United States judge, and by at least one credible witness other than Chinese that he was a resident of the United States on the fifth of May, 1892, and if, upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted, upon his paying the costs."

The only question for decision now is whether or not the burden is with the government to first prove to the satisfaction of the court that the accused is a Chinese person, before it is necessary that he shall be required to offer evidence tending to show that he is lawfully within the United States.

Under the acts of Congress and the decisions of the courts, it is clearly the duty of this court, when it appears to its satisfaction that the accused is a Chinese person, to order him deported, unless he affirmatively shows by clear and convincing evidence that he is lawfully here, under one or more of the provisions of the Chinese exclusion act. The acts do not themselves undertake to provide how the party's nationality shall be made to appear to the satisfaction of the court.

In the instant case, the government undertook to establish the fact that the person accused was a Chinese person only by reading an ex parte affidavit made by the Chinese inspector, upon which the warrant for his arrest was issued. If the burden is upon the government to make it appear to the satisfaction of the court that the party is a Chinese person, then I am of the opinion that the ex parte affidavit made by the inspector is not competent for that purpose. The affidavit performed its function when the warrant of arrest was issued, and it was not evidence tending to prove the truth of the charges made in the warrant. It follows, therefore, that the result is that the government has offered no evidence tending to support the allegation in the affidavit and warrant that the defendant is a Chinese person.

Upon the other hand, if the mere charge on the part of the government that the defendant is a Chinese person is all that is necessary to establish its right to an order of deportation, then such order should

be made in this case, for the reason that the defendant offered no testimony of any character.

If an order of deportation is to be granted in this case, it must be done upon the court's assuming, without any competent evidence to so satisfy it, that the defendant is a Chinese person, in the absence of any law of Congress authorizing such course, and in the absence of any decision of the Supreme Court of the United States or Circuit Court of Appeals of the Sixth Circuit to that effect.

I am unwilling to say that the defendant in this case is a Chinese person. A casual observation of the face of the person whom I recognized as the defendant as he sat in the courtroom shows that he is of the Mongolian race; but whether he is a Chinese, a Korean, or a Japanese, I am wholly unable to say. He was attired in the ordinary street apparel of an American gentleman, with his hair worn as an American, and nothing to indicate that he is a Chinaman, except his color and features, which are more or less common to all Mongolians. Nor is his name distinctively a Chinese name. In the total absence of any other evidence, I do not think this sufficient, even if competent for any purpose, to authorize the court to say that he is a Chinaman, or of Chinese descent.

I am of the opinion that it was incumbent upon the government to first introduce testimony showing to the satisfaction of the court that the defendant is a Chinese person, in order to sustain its jurisdiction and justify an order of deportation. This it did not do, and the motion by counsel to discharge the defendant is allowed.

The opinion of the Circuit Court of Appeals of the Sixth Circuit in the case of the United States v. Hung Chang, 134 Fed. 19, 67 C. C. A. 93, I think, sustains this conclusion.

In that case, as here, a United States commissioner had entered an order of deportation, from which there was an appeal taken to the United States District Court. There at the hearing the United States offered evidence tending to prove that Hung Chang was a Chinese person, all of which was excluded by the court as being incompetent. The accused offered no evidence, and an order reversing the order of the commissioner and discharging the defendant was entered, and an appeal and writ of error were taken to the Circuit Court of Appeals for a review of the action of the District Court.

The case was reversed upon the ground that the evidence which was excluded by the district judge was competent and sufficient to satisfy the Court of Appeals that Hung Chang was a Chinese person, and the order of the commissioner, deporting him, was affirmed.

In discussing that case, Judge Richards said:

"Hung Chang was arrested and tried under section 13, subject to the regulations established by section 3 (referring to section 13 of the act of Congress of September 13, 1888 [Act Sept. 13, 1888, c. 1015, 25 Stat. 479, U. S. Comp. St. 1901, p. 1317] and section 3 of the act of Congress of May 5, 1892). His plea of 'not guilty' put in issue two questions: First, was he a Chinese person, or a person of Chinese descent? Second, was he entitled to be and remain in the United States? If found to be a Chinese person, or person of Chinese descent, it then becomes his duty to establish his lawful

right to remain in the United States, and this he was to do by 'affirmative proof, to the satisfaction of such justice, judge or commissioner.' "

And again:

"It is not required to do more than satisfy the commissioner or judge by affirmative proof that the one under arrest is a person of Chinese descent. * * * Undoubtedly it is necessary for the commissioner and the court to find that the defendant is a person of Chinese descent, in order to sustain their jurisdiction and justify the deportation."

It should be said that the Hung Chang Case, supra, is different from the instant case in this: There the charge was that the accused was a Chinese person, while here the charge is that the accused is a Chinese laborer. I do not think this difference in the charge made affects the question as to the burden of proof in relation to the nationality of the party, since in both cases it must be made to appear that the accused is a Chinese person. U. S. v. Chin Ken (D. C.) 183 Fed. 332.

This conclusion has been reached after a careful examination of the case of Fong Yue Ting et al. v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905. In that case it is said that when, in the form prescribed by law, an executive officer, acting in behalf of the United States, brings a Chinese laborer before the judge, in order that he may be heard, and the facts upon which depends his right to remain in the country decided, "the case is duly submitted to the judicial power, * * * and, if no evidence is brought by the Chinaman, the judge makes the order of deportation as upon a default." But that opinion of the court is based upon the assumption that a Chinese person is brought before the judge. That is the very question under consideration here. Is this defendant a Chinese person? While the Fong Yue Ting Case is more nearly an authority for holding that it is not necessary for the government to first prove the defendant a Chinese person than any other case I have found, yet I am of the opinion that it does not go that far, but it only holds that it is the duty of the judge to make an order of deportation when a Chinese person is brought before him, if he fails to produce competent evidence to satisfy the court that he is lawfully here, but the court must first be satisfied by competent evidence that such person is a Chinese.

After the government's proof in chief was closed, and the motion to discharge the defendant, upon the ground that no competent evidence had been offered to show that the defendant was a Chinese person, had been made and argued, the United States district attorney asked permission to offer such evidence.

This, I think, came too late. The defendant was entitled to the ruling of the court on his motion, upon the record as it stood when the motion was made. The application was therefore denied.

An order will be entered consistent with these views.