## TOY TONG et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 18, 1906.)

### No. 30.

1. ALIENS—CHINESE—EXCLUSION—PROCEEDINGS—JURISDICTION—STATUTES.

Chinese Exclusion Act March 3, 1901, c. 845, § 3, 31 Stat. 1093 [U. S. Comp. St. 1901, p. 1328], declares that no warrant of arrest for violation of the Chinese exclusion laws shall be issued by United States commissioners except on the sworn complaint of a United States district attorney, assistant United States district attorney, collector, deputy collector, or inspector of customs, immigration inspector, United States marshal or deputy, or a Chinese inspector, unless the issuance of the warrant shall be first approved or requested in writing by the United States district attorney of the district in which it is issued. *Held*, that the official titles used in describing the persons entitled to make the complaint were mere descriptio personæ, and hence, where a complaint was made by a Chinese inspector, it was immaterial that it was filed with a United States commissioner outside the inspector's official district.

[Ed. Notes.—Citizenship of Chinese, see note to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

2. SAME.

Since no formal complaint or pleadings are required in Chinese deportation proceedings, where certain Chinese persons proceeded against were before the commissioner and before the District Court on appeal, objections to the validity of the process of arrest were not available to oust the court of jurisdiction.

3. SAME—NATURE·OF PROCEEDINGS—REVIEW.

 Proceedings to enforce the Chinese exclusion acts, being administrative, rather than judicial, the decision of a Chinese inspector refusing permission to a Chinese person to land is not reviewable by the courts.

4. SAME—BURDEN OF PROOF.

 Where a Chinese person is brought before a United States commissioner or judge charged with being in the country illegally, the burden is on him to establish his right to remain, and unless he sustains the same his deportation follows by the terms of the statute.

5. JURY—TRIAL BY JURY—CHINESE DEPORTATION PROCEEDINGS.

 Proceedings for the deportation of Chinese persons are not "causes," within Rev. St. § 566 [U. S. Comp. St. 1901, p. 461], declaring that the trial of issues of fact in the United States District Courts in all causes except cases in equity and cases of admiralty and maritime jurisdiction, etc., shall be by jury.

6. ALIENS—CHINESE DEPORTATION PROCEEDINGS—OBJECTION—RIGHT TO URGE—RULES—INVALIDITY.

 Where, in proceedings for the deportation of certain Chinese persons, none of them were alleged to have ever had any certificate entitling them to remain in the United States, or that any such certificates had been taken from them, pursuant to Chinese Regulation Rule 23, the invalidity of such rule was immaterial.

Appeal from the District Court of the United States for the District of New Jersey.

Max J. Kohler, for appellants.

John B. Vreeland, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. This is an appeal from the judgments and orders of the United States District Court for the District of New Jersey, affirming orders made by United States Commissioner Russ, of Hoboken, for the deportation to· China of the four appellants. Though one complaint originally included all the defendants, the government conceded before the commissioner that they were entitled, on their demand, to separate trials, and the cases were tried separately, though much evidence common to all the cases was stipulated · into the several records. In the District Court evidence common to all four cases was also taken on behalf of the government, though separate orders of deportation were entered, but for convenience on this appeal, the cases were thereafter consolidated on consent, as in the case of U. S. v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544.

 The cases were brought under section 12 of the Act of July 5, 1884 (chapter 220, 23 Stat. 117, 1 Supp. Rev. St. pp. 460, 461 [U. S. Comp. St. 1901, p. 1310]), as in the case of U. S. v. Lee Yen Tai, 185 U. S. 213, 22 Sup. Ct. 629, 46 L. Ed. 878; but section 13 of the act of September 13, 1888 (chapter 1015, 25 Stat. 479, 2 Supp. Rev. St. p. 144 [U. S. Comp. St. 1901, p. 1317]) is also relied upon by the government, as conferring jurisdiction on the United States Commissioner. The complaint verified by Inspector Sisson on April 20, 1904, charges an unlawful entry into the United States by defendants without "certificates entitling them to admission into the United States, as required by the Chinese exclusion acts and by law." The evidence adduced by the govern-

ment tended to show that these defendants were in a railroad train in Canada, on April 15, 1904, with tickets reading "from Hamilton to Wind Mill Point." They changed cars, according to this witness, at Caledonia, about 50 miles from the Niagara frontier, and the Chinese inspectors at Buffalo were duly warned to "head them off." On April 20, 1904, six men, claimed by the government to be the same, were arrested at Hoboken by Inspector Sisson, four of them being these appellants. Defendants offered no evidence before either the Commissioner or the District Court, other than what was brought out on cross-examination of the government witnesses and matters noticed judicially by the court at their request. From the order of deportation made by the commissioner in each case, appeal was taken to the District Court for the District of New Jersey, where the said orders of the commissioner were affirmed and orders issued by the District Court, directing the deportation of the respondents. With these orders of deportation, the following memorandum was filed by the learned judge of the District Court:

"On June 28, 1904, United States Commissioner Edward Russ made an order adjudging Toy Tong to be a Chinese person and to be unlawfully within the United States, and not lawfully entitled to be and remain in the United States, and ordering him to be removed from the United States to China at the cost of the United States. Similar orders were made in the cases of the other three respondents. Appeals from these orders are now pending before this court. Numerous objections to the proceedings · have been made by the counsel for the respondents, several of which were disposed of in memorandum opinions filed on September 17, 1904, and October 31, 1904. The appeals have now been heard by this court upon the proofs taken before Commissioner Russ and additional proofs taken in this court. Neither before Commissioner Russ nor in this court has any of the respondents offered himself as a witness. On the authority of the late case of United States v. Hung Chang, decided by the Circuit Court of Appeals of the Sixth Circuit (134 Fed. 19, 67 C. C. A. 93) as well as of the other cases construing the law concerning the deportation of Chinese persons, and on the evidence taken in this case, I think the findings and orders of the commissioner' should be affirmed, and that orders should be made in this court directing the deportation of the respondents. ·
"[Sgd] W. M. Lanning, Judge."

The provisions of the United States Chinese exclusion acts, brought under consideration, are the following:

Section 12 of the act of July 5, 1884 (23 Stat. 117, c. 220 [U. S. Comp. St. 1901, p. 1310]):

"Sec. 12. That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, and at the cost of the United States, after being brought before some justice, judge, or commissioner of a court of the United States and found to be one not lawfully entitled to be or to remain in the United States; and in all such cases the person who brought or aided in bringing such person to the United States shall be liable to the government of the United States for all necessary expenses incurred in such investigation and removal; and all peace officers of the several states and territories of the United States are hereby invested with the same authority as a marshal or United States marshal in reference to carrying out the provisions of this act or the act of which this is

amendatory, as a marshal or deputy marshal of the United States, and shall be entitled to like compensation to be audited and paid by the same officers."

Section 13 of the act of September 13, 1888:

"Sec. 13. That any Chinese person or person of Chinese descent found unlawfully in the United States or its territories may be arrested upon a warrant issued upon a compliant, under oath, filed by any party on behalf of the United States, by any justice, judge, or commissioner of any United States court, returnable before any justice, judge, or commissioner of a United States court, or before any United States court, and when convicted upon a hearing and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came. But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district."

Section 3 of the act of March 3, 1901 (31 Stat. 1093, c. 845 [U. S. Comp. St. 1901, p. 1328]):

"Sec. 3. That no warrant of arrest for violations of the Chinese exclusion laws shall be issued by United States commissioners excepting upon the sworn complaint of a United States district attorney, assistant United States district attorney, collector, deputy collector, or inspector of customs, immigration inspector, United States marshal, or deputy United States marshal, or Chinese inspector, unless the issuing of such warrant of arrest shall first be approved or requested in writing by the United States district attorney of the district in which issued."

The first point made by appellants' counsel, is that "appellants should all be discharged for want of jurisdiction, because these causes were instituted by New York officers having no authority in New Jersey." The admitted facts are, that the complaint was sworn to before a United States Commissioner, at Hoboken, N. J., by Chinese Inspector Sisson, who is a resident in New York City, and is a deputy of F. W. Berkshire, whose official station and jurisdiction is stated by authority of the Commissioner of Commerce and Labor to be the state of New York. The contention is made that, inasmuch as section 3 of the act of March 3, 1901, provides that no arrests for violation of the Chinese exclusion laws shall be made, excepting upon the sworn complaint of certain designated officials, the warrant issued on the complaint of Chinese Inspector Sisson was void, for the reason that he was not authorized to act as such inspector outside of the state of New York. The same objection, of course, could be made had the complaint been sworn to by any of the officials named who were appointed such for a given territory or district, other than that in which the complaint was made.

The objection, however, is without merit, for the reason that the statute, in enumerating those who may make complaint, uses the official title as descriptio personæ. The act of making a sworn complaint can ordinarily be performed by any person, and the official character of the affiant adds nothing per se to its force and effect. Such a complaint, in the ordinary administration of criminal law, furnishes the ground for official action, but the affiant is not performing an official act. Section 3 of the act of March 3, 1901, takes away the authority theretofore resting in the commissioner, to issue a warrant of arrest

upon the sworn complaint of any one who chooses to make it, and limits it to complaints made by certain persons holding office under the United States. A complaint made by a United States district attorney for the Southern District of New York, before a commissioner in the state of New Jersey, is still a complaint made by a United States district attorney. Such an act is not official, except that, holding such office, the commissioner is authorized to receive his sworn complaint in the premises. He has nothing to do, on account of such action, with the prosecution of the case, any more than would the private citizen who made such complaint before the passage of the act referred to. A fortiori this applies to the complaint made by a Chinese inspector, whose duties are in a measure undefined and may be extended over any territory whatever in the discretion of his official superior. The complaint made by Sisson, in Hoboken, was a complaint made by a Chinese inspector, and was therefore made by a person designated in section 3 of the act referred to.

But the sufficient answer to appellants' point is, that the defendants were before the commissioner and before the court, and objections to the validity of the process of arrest were not available to oust the jurisdiction. "No formal complaint or pleadings are required, and the want of them does not affect the authority of the judge, or the validity of the statute."

The second point made by counsel for appellants is, that the District Court erroneously denied appellants' demand for a jury trial. It is not claimed that the right to a jury trial is constitutional, but that it is conferred by a statute. Reference is made to the following section of the United States Revised Statutes:

"Sec. 566. The trial of issues of fact in the district courts, in all causes except cases in equity and cases of admiralty and maritime jurisdiction, and except as otherwise provided in proceeding in bankruptcy, shall be by jury." [U. S. Comp. St. 1901, p. 461.]

The contention is that, inasmuch as it has been decided that these appeals under section 13 of the act of September 13, 1888 (chapter 1015, 25 Stat. 479 [U. S. Comp. St. 1901, p. 1317]), are in the District Court, and not before the district judge individually (U. S. Petitioners, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931), and are properly to be heard de novo in that court; they come within the purview of section 566 of the Revised Statutes, above quoted.

The trouble with the appellants' conclusion, founded upon these premises, is that these appeals are not "causes," in the proper sense of that word, as used in section 566 of the Revised Statutes.

The proceedings to enforce the Chinese exclusion act are administrative rather than judicial. With certain specific exceptions, no Chinese person is allowed to land in the United States, and the decision of an inspector refusing permission to a Chinese person to land, is not reviewable in the courts. Nishimura Ekiu v. U. S., 112 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146. Under the provisions of these acts, no Chinese person is allowed to remain within the United States, unless he can show a certificate from the proper officer of the port at which he landed, that he has lawfully entered the United States. Chinese per-

sons found unlawfully in the United States are to be deported, and any person without, or unable to produce, the certificate above mentioned, is deemed to be unlawfully in the country and must be deported. When brought before a commissioner or judge, the burden to establish his right to remain in the country is upon him, and unless it is so shown, his deportation follows, by virtue of the statute in that behalf. This ascertainment of the right of the person arrested to remain in the country, by the commissioner or District Court, does not constitute a criminal prosecution or a suit at common law, to which the constitutional right of trial by jury attaches.

Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905, reviews certain habeas corpus proceedings in the Circuit Court of the United States for the Southern District of New York. In one of these cases, the petitioner represented that he had been arrested by a United States marshal as being a Chinese laborer, found within the jurisdiction of the United States without a certificate of residence, that he was taken by said marshal before the district judge of the United States, and that "the said United States judge, without any hearing of any kind thereupon ordered that your petitioner be remanded to the custody of the marshal * * * and deported forthwith from the United States, as is provided in said act of May 5, 1892," and that he was detained by virtue of the marshal's claim of authority and the judge's order.

Section 6 of the act of May 5, 1892 (chapter 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320]), here referred to, provided that all Chinese laborers within the United States at the time of the passage of the act entitled to remain therein, shall, within one year, apply to the collector of internal revenue of their respective districts, for a certificate of residence, and that any Chinese laborer within the limits of the United States who, after one year from the passage hereof, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested by certain officials, including a United States marshal or his deputies, and taken before a United States judge, "whose duty it shall be to order that he be deported from the United States as hereinbefore provided, unless he shall establish clearly to the satisfaction of said judge, that, by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate, and to the satisfaction of the court, by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act."

In delivering the opinion of the Supreme Court, Mr. Justice Gray uses this language:

"The proceeding before a United States judge, as provided for in section 6 of the act of 1892, is in no proper sense a trial and sentence for a crime or offense. It is simply the ascertainment, by appropriate and lawful means, of the fact whether the conditions exist upon which Congress has enacted that an alien of this class may remain within the country. The order of deportation is not a punishment for crime. It is not a banishment, in the sense in which that word is often applied to the expulsion of a citizen from his country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the condi-

tions upon the performance of which the government of the nation, acting within its constitutional authority and through the proper departments, has determined that his continuing to reside here shall depend. He has not, therefore, been deprived of life, liberty or property, without due process of law; and the provisions of the Constitution securing the right of trial by jury, and prohibiting unreasonable searches and seizures, and cruel and unusual punishments, have no application."

We think this characterization by the Supreme Court, of the proceeding provided for in section 6 of the act of 1892, is applicable in a general way to the proceedings referred to in section 12 of the act of 1884 and section 13 of the act of 1888, with which we are here concerned. In the exercise of the sovereign right to determine what classes of aliens shall be prohibited from entering the United States, or from remaining therein, Congress has been compelled, in order to make such prohibition effective, to resort to drastic measures, and has relied upon administrative officers to execute its will, and has provided for the ascertainment by summary proceedings, of the facts, with reference to which its will is to be carried into execution. Such alien cannot be heard to complain that the proceedings connected with his exclusion or deportation are summary in their character, and that the review upon appeal in the District Court of the action of the commissioner, is not held to be such a cause as entitles him to a trial by jury. The hearing before the district judge is de novo, in the sense that testimony is taken before such judge de novo, there being no provision that the matter should be heard upon the testimony taken before the commissioner. It is still an appeal from the commissioner, and partakes of the character of the proceeding before that official. If the constitutional provision of trial by jury cannot be invoked in this case, on the ground that it is not a criminal prosecution or a suit at common law, it would seem clear that such right cannot be invoked on the ground that it is a "cause" in the District Court, within the meaning of section 566 of the Revised Statutes, since, not being a suit at common law, it can only be such a "cause" by being a criminal prosecution.

The case of In re Chow Goo Pooi (C. C.) 25 Fed. 77, was a habeas corpus case, heard by the Circuit Court for the District of California before three judges. The petitioner had been arrested under the provisions of the twelfth section of the act of May 6, 1882 (chapter 126, 22 Stat. 61 [U. S. Comp. St. 1901, p. 1310]), which was afterwards amended and made to read as in the twelfth section of the act of July 5, 1884. The twelfth section of the original act provided that any Chinese person found unlawfully within the United States shall be caused to be removed therefrom to the country from whence he came, and at the cost of the United States, after being brought before some justice, judge, or commissioner of a court of the United States, and found to be one not lawfully entitled to be or remain in the United States.

To the objection of the petitioner, that he had not been accorded a trial by jury, the Circuit Court said:

"We are also of opinion that the person thus brought before the magistrate has no right to a trial by jury. He is not brought before him as a

criminal. No punishment as such is inflicted upon him. The consequence of his being unlawfully here is that he will be sent back to the country from whence he came. The power conferred and exercised is essentially a police power."

It is not without significance that, neither in this case nor in the case in the Supreme Court, just quoted from, is the requirement of section 566 referred to.

The next point of appellants meriting attention, is that "the District Court erred in applying section 6 of the act of July 5, 1884 (chapter 220, 23 Stat. 116 [U. S. Comp. St. 1901, p. 1307]), against defendants, notwithstanding the fact that under illegal regulations, carried into practice by the government, Chinese arriving in the .United States are unlawfully deprived of their certificates under an illegal regulation (rule 23 of the Chinese regulations of 1903) requiring the administrative officials to impound them." The section referred to provides that the certificate given to a Chinese person at the port at which he is allowed to land should be afterwards produced to the proper authorities of the United States, whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same, to establish a right of entry into the United States. Rule 23 of the regulations promulgated by the Commissioner General of Immigration, with the approval of the Secretary of Commerce and Labor, in 1903, reads as follows:

"Rule 23. All certificates, or other evidence, offered by Chinese persons to establish their right of admission to the United States, other than laborers' registration certificates, shall be retained by the officers in charge of the administration of the Chinese exclusion laws at ports of entry; the immunity from arrest of the Chinese persons admitted thereon resting upon their exclusive occupation in the pursuits for which their certificates, or other evidence, claim that they respectively seek admission to the United States."

This rule was in force at the date of the alleged entry in April, 1904, although it was afterwards amended in May, 1905, by the Secretary of Commerce and Labor, by excepting the certificates provided for in Section 6 of the Act of July 5, 1884. Undoubtedly the promulgation of such a rule was inconsistent with the provisions in regard to certificates contained in the acts of Congress, and contravened the rights conferred upon Chinese in respect to such certificates, and the rule could not be legally enforced. No hardship is made to appear, however, in these cases from the enforcement of this rule in the cases before us. None of the appellants has alleged that he was in possession of such a certificate, or that such a certificate was taken from him, pursuant to the requirement of this rule, nor is there any evidence adduced to that effect. The criticism of the rule, however just under other circumstances, has no relevancy in the present case.

The other points raised by the so-called assignments of error are without merit, and need not be discussed. We find no warrant, therefore, for the interference of this court in the judgments, orders and decisions of the United States District Court for the District of New Jersey in the said causes, and the same are affirmed.