UNITED STATES v. CHU HUNG.

(District Court, D. South Carolina.  April 18, 1910.)

ALIENS (§ 32*)—CHINESE PERSONS—CITIZENS—EVIDENCE.

    Evidence *held* to require a finding that a Chinese person was born in the United States, and therefore was not subject to deportation under the exclusion law.

    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*

    Citizenship of Chinese persons, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

Deportation proceedings against Chu Hung.  From a commissioner's deportation order, defendant appeals.  Reversed.

Ernest F. Cochran, U. S. Atty., and Abial Lathrop, Asst. U. S. Atty.

Logan & Grace, for defendant.

BRAWLEY, District Judge.  This is an appeal from an order of United States Commissioner Young, adjudging that the defendant, Chu Hung, is a Chinese person unlawfully within the United States, and directing the marshal with all convenient dispatch to transport him to China.

The only testimony for the government was that of Joe Lee, a Chinese interpreter, who testified that Chu Hung was a Chinese, and that he was in the laundry business at 142 King street.  He said he did not know whether Chu Hung was born in this country or not.  It appears that he had no acquaintance with the defendant.  He had seen him only a few days before the hearing, and his conclusion that he was a Chinaman was solely due to the fact that he had a Chinese name and spoke the Chinese language.  There is no doubt as to the correctness of this testimony; for the defendant, who appeared before me, manifestly has the appearance of a Chinaman.  The defendant testified that he was 31 years of age; that he was born in San Francisco, his father being a Chinaman and his mother Irish; that he lived in San Francisco until he was 12 years old, on the second story of the building at 947 Dupont street; that he had a cousin who lived in New York, who sent for him to come to New York, and that after his arrival there he worked in a grocery, and after making some money invested it in the business, and he produced a certificate from the clerk of the Supreme Court of New York that he was a partner in the business; that the business was not very good, and that he came to Charleston six years ago and learned the laundry business, which he has been conducting since that time; that he is a Christian, and a member of the Grace Church Sunday School; that he still retains an interest in the business in New York.  This is substantially all the testimony in the case.

The commissioner found that, inasmuch as the defendant "did not seem to be able to remember any facts by which the accuracy of this testimony could be tested," he was unconvinced that his story was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

true, and therefore that he had failed to prove his right to be and remain in this country. In United States v. Wong Kim Ark, 169 U. S. 649, 18 Sup. Ct. 456, 42 L. Ed. 890, the Supreme Court of the United States decided that a child born in the United States of parents of Chinese descent, who at the time of his birth are subjects of the Emperor of China, had a permanent domicile and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity under the Emperor of China, becomes at the time of his birth a citizen of the United States by virtue of the first clause of the fourteenth amendment of the Constitution. It is clear, therefore, that if Chu Hung has told the truth he is a citizen of the United States and entitled to all the privileges of a citizen.

The right to exclude or expel aliens absolutely or upon conditions is the inherent right of every independent nation, and deportation is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government has decided that his continuing to reside here shall depend. The acts of Congress under which this proceeding is brought, generally known as the "Chinese Exclusion Acts," apply to aliens only. In nearly all of the cases that have been cited, and which I have examined, there has been some proof justifying an inference of an unlawful entry into the United States. As an example, in one of the cases cited by the commissioner, Toy Tong v. United States, 146 Fed. 345, 76 C. C. A. 621, evidence was offered by the government that the defendants were in a railroad train in Canada on April 15, 1904, with tickets reading from Hamilton to Wind Mill Point; that they changed cars about 50 miles from the Niagara frontier, and the Chinese inspectors at Buffalo were duly warned to head them off. Five days later they were arrested at Hoboken, N. J. From the testimony before the United States commissioner it was clear that the respondents were not lawfully entitled to be and remain in the United States, and the respondents offered no testimony.

In the case of Chu Hung the government offered no testimony tending to show that he was at any time since his birth beyond the limits of the United States. The sole ground upon which the order of deportation rests is that the commissioner was unconvinced that the story of Chu Hung was true, because the respondent did not seem to be able to remember any facts by which the accuracy of his testimony could be tested. There is nothing in the story told by Chu Hung that is intrinsically improbable or unreasonable. Left an orphan of tender years, he, as he expressed it, "bummed" about in San Francisco until he was 12 years old, when he went to New York on the invitation from his cousin, was engaged in business there until 6 years ago, when he came to Charleston, where he has led an industrious and correct life, and there is no testimony tending to show that he was an untruthful person, and his counsel upon the hearing before me offered to produce evidence of his good character by our most reputable citizens; but inasmuch as upon the hearing the district attorney stated that he would not attempt to impeach his character it was not considered

necessary to take this testimony. When it is considered that the boy was only 12 years of age when he left San Francisco, an orphan and a waif, it is not surprising that he should not remember facts connected with his life there by which the accuracy of his statements could be tested. That is not enough to discredit him, for it would be a matter of wonder if he could. He told a plain, simple story, and his appearance and manner impressed me favorably, and I find no grounds to believe that the story is not true. A mere suspicion that he may not be truthful does not seem to me to be a sufficient reason for a sentence of banishment. If his story is true, he is a citizen of the United States, entitled to all of its privileges. As a citizen he could not be held to answer for any offense the punishment of which would be half so severe, without an indictment by a grand jury and a trial.

President Madison, in his comment on the Virginia resolutions concerning the alien and sedition laws, referring to the possibilities which attend the removal from the country, said:

"If a banishment of this sort be not a punishment, and among the severest of punishments, it will be difficult to imagine a doom to which the name applies."

It may well be that the respondent would be powerless to find any testimony in San Francisco to prove his citizenship. He left there as a boy, 18 or 19 years ago, and it is doubtful that he could find there any one who remembers him, and there is no provision in the law for summoning witnesses from a distance or for taking depositions. It would probably be an exaggeration to impute to him all or much of the feeling which a man of our own race attaches to the idea of country; but it is not exaggeration to say that to be forcibly taken away from his home and family and friends and business and property, and from the only country that he has ever known, and sent across the ocean to a distant land, where he is a stranger, would be most severe and cruel punishment.

The power to exclude aliens is not to be denied; but it is not to be believed that it was the intention of Congress to provide that a citizen, simply because he belongs to an obnoxious race, should be deprived of all the liberty and protection which the Constitution guarantees. No person can be lawfully convicted or punished for any offense unless his guilt is established beyond a reasonable doubt. Persons charged with the vilest crimes are entitled to a presumption of innocence. Arbitrary and despotic power cannot be exercised with reference to their persons or property, yet I am called on to send out of the country a person lawfully domiciled here, engaged in the ordinary pursuits of life, not suspected of being concerned in any treasonable machinations against the government, to execute what, in effect, is a legislative sentence of banishment of one who claims to be a citizen, who, if his story is true, is a citizen, and without any proof that his story is not true. This would be an exercise of arbitrary power incompatible with any principles of justice, inconsistent with the nature of our government, and in conflict with its Constitution.

The order of the commissioner, directing the deportation of Chu Hung, is reversed, and the marshal is directed to set him free.