MAR BING GUEY v. UNITED STATES.

(District Court, W. D. Texas. November 1, 1899.)

1. ALIENS—STATUS OF CHINESE PERSONS—MERCHANTS.
   A Chinese man, who owns an interest in a mercantile firm, but is not actively engaged in the conduct of its business, and who works as head cook in a restaurant, of which he is a part proprietor, is a laborer, and not a merchant, within the terms of Act Nov. 3, 1893 (28 Stat. 8).[1]

2. SAME—DEPORTATION OF CHINESE—ERRONEOUS DECISION PERMITTING ENTRY.
   Under Act July 5, 1884, §§ 6, 12 (23 Stat. 116, 117), which requires Chinese persons other than laborers desiring to enter the United States, and not domiciled therein, to procure a certificate from the Chinese authorities, viséd by the consular representative of the United States, and makes such certificate the only evidence receivable to establish the right of such person to enter, a Chinese person erroneously permitted to enter without such certificate is unlawfully within the United States, and may be arrested and deported, without regard to his occupation since his entry; and in such case the action of the customs official in permitting his entry is not even prima facie evidence of his right to remain.

This case is on appeal from the decision of the United States commissioner at El Paso ordering the deportation of the appellant, Mar Bing Guey, to China, for being unlawfully in the United States.

On the 10th day of June, 1899, Mar Wing Joh, the father of the appellant, made application to the collector of customs at El Paso, Tex., for the admission of his son into the United States. The application was predicated upon the affidavit of two citizens, Parker and McPhetridge, and the affidavits of Mar Wing Joh and Mar Bon. The affidavit of Parker and McPhetridge is as follows: "Whereas, Mar Wing Joh, a Chinese resident of the city of El Paso and state of Texas, a correct photographic likeness of whom appears upon this page, is desirous of establishing his status as Chinese merchant, to the end that his son, Mar Bing Guey, may be permitted to enter the United States of America for the purpose of joining his father: Now, therefore, we, the undersigned residents of the city of El Paso, and citizens of the United States, do solemnly swear that we are personally well acquainted with the said Mar Wing Joh, and that we have been so acquainted with him for more than five years last past; that he was for several years a member of the firm of Woey Gee & Co., Chinese merchants doing business at the corner of Oregon and Second streets in El Paso, and that he is now a Chinese merchant, and a member of the firm of Hong Chun & Co., recently organized, and doing business at 117 Second street, in El Paso, Texas; and we do further swear that we have reason to believe and do believe that the interest of the said Mar Wing Joh in said mercantile business is of the value of one thousand dollars." Mar Wing Joh made affidavit to the following statement: "I, Mar Wing Joh, do solemnly swear that Mar Bing Guey, a correct photographic likeness of

[1] As to citizenship of Chinese persons, see note to Gee Fook Sing v. U. S., 1 C. C. A. 212, and, supplementary thereto, note to Lee Sing Far v. U. S., 35 C. C. A. 332.

whom appears on this sheet, is my lawful son, and that he was born in the village of Nan Yong, in the province of Kwang Tung, in the empire of China; that he was born on the 15th day of May, eighteen hundred and eighty-eight; that his mother is now dead; that I have been a resident of the city of El Paso and state of Texas for about eleven years last past. I do further solemnly swear that I am a Chinese merchant, and a member of the firm of Hong Chun & Co., recently organized, and doing business at No. 117 Second street, in the city of El Paso, Texas, and that my interest in the said mercantile business is of the reasonable value of more than one thousand dollars; that for several years previous to the formation of the firm of Hong Chun & Co. I was a member of the firm of Woey Gee & Co., a firm carrying on a general Chinese merchandise business at the corner of Oregon and Second Sts., in El Paso, Texas, which said firm is since dissolved. I further solemnly swear that the said Mar Bing Guey is without any other lawful guardian and custodian than myself." The affidavit of Mar Bon will be pretermitted, as it is not regarded as material. On the date of the presentation of the application the collector permitted the appellant to enter the United States pursuant to the following indorsement made by him on the papers: "Admitted on within evidence this 10th day of June, A. D. 1899." Upon further investigation into the facts of the case, the collector concluded to revoke his action granting the appellant permission to enter, and on July 29, 1899,—the date of the appellant's arrest for being unlawfully in the United States,—he made the following indorsement on the affidavits: "On reinvestigation of within case, it is found the within evidence is not true, and permission to enter is hereby revoked." Accompanying the record is a certificate of residence in the usual form issued to Mar Wing Poh—intended for Mar Wing Joh—as a laborer by the collector of internal revenue of the Third district of Texas on the 29th day of January, 1894. The remaining material facts which have been agreed to by counsel are substantially: (1) That the appellant is a native of China, the son of Mar Wing Joh, and was born May 15, 1888; (2) that Mar Wing Joh has resided in El Paso since the year 1888, and that the certificate issued to him is a genuine laborer's certificate; (3) that Mar Wing Joh was formerly a member of the firm of Woey Gee & Co., general Chinese merchants doing business in El Paso, Tex., and remained a member of said firm until its dissolution in 1896; that in 1898 he became a member of the firm of Hong Chun & Co., general Chinese merchants doing business in El Paso, and is a member of said firm at the present time; (4) that since 1892 Mar Wing Joh has not actively engaged in conducting such business of merchandising, and has not been about said stores engaged in buying and selling merchandise; that he owns a one-third interest in the restaurant known as the "Union Kitchen," and is the head cook in it, and that he has been cooking since the date of the issuance to him of his certificate of residence; (5) that shortly after the entrance of the appellant into the United States his father placed him in a night school, where he is being taught reading and writing in English, and he has been in regular attendance upon said school up to the date of his arrest; (6) the appellant has not been engaged in any manual labor; his mother died about one year ago, and after her death he left China, and came to Juarez, Mexico. He has never been in the United States before.

Richard F. Burges, for appellant.

Henry Terrell, Dist. Atty., and A. G. Foster, Asst. Dist. Atty., for the United States.

MAXEY, District Judge, after stating the facts as above, delivered the following opinion:

It appears from the foregoing statement that it was the purpose of Mar Wing Joh, in submitting affidavits to the collector of customs, to establish his status as a merchant, with the view of securing the admission of the appellant into the United States. The appellant had never before been in this country, and the father doubtless entertained the view that, with his own status as a merchant

97 F.—37

established to the satisfaction of the collector, such status would be imputed to his minor child, and that he could enter without obtaining the certificate required by the sixth section of the act of July 5, 1884 (23 Stat. 116, 117). And it is contended by counsel for the appellant that, the collector having permitted the appellant to enter upon the evidence submitted to him, he was thereafter lawfully in the country, and it was beyond the power of the collector to revoke the permission to enter previously granted. In view of the conclusion reached by the court upon other questions presented by the record, it is not deemed important to determine whether the collector had authority to recall his previous action; and, leaving that question for future consideration, the court will assume that when the appellant was arrested for being unlawfully in the country he was here by permission of the collector. But the action of the collector was not final. The court may still inquire whether the appellant was lawfully in the country, and, if unlawfully here, it is the duty of the court to deport him. The principle is clearly stated by Judge De Haven in the case of U. S. v. Lau Sun Ho (D. C.) 85 Fed. 423, 424, in the following language:

"But the action of a collector of customs in permitting a Chinese alien to land in this country is not in any sense judicial, and does not fall within the rule applicable to decisions of special tribunals of the character of those which have been referred to. The law does not give to such order or permission the effect of a judgment that such person is entitled to remain in the United States. The only effect of such permission is that the passenger claiming the right so to do is allowed to land, and if subsequently such alien is arrested, and charged with being unlawfully in the United States, the order of the collector of customs, under which such person was permitted to land, is not even prima facie evidence of his right to remain in the United States; and the court, in such a proceeding, inquires into the truth of the matter unembarrassed by such order of the collector." In re Li Sing, 30 C. C. A. 451, 86 Fed. 896; In re Li Foon (C. C.) 80 Fed. 881; U. S. v. Loo Way (D. C.) 68 Fed. 475; U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271. See, also, U. S. v. Jung Ah Lung, 124 U. S. 621, 8 Sup. Ct. 663; U. S. v. Chung Shee, 22 C. C. A. 639, 76 Fed. 951.

Was the appellant then lawfully in the United States at the date of his arrest? If it be conceded, ex gratia argumenti, and as held by Judge Hanford, of the Ninth circuit, in the cases of In re Lee Yee Sing (D. C.) 85 Fed. 635, and U. S. v. Gue Lim (D. C.) 83 Fed. 136, that the minor son of a resident merchant may enter the country for the first time without having obtained the certificate required by the sixth section of the act of 1884, does it appear from the record that Mar Wing Joh is a merchant, within the meaning of the Chinese exclusion acts? By the second paragraph of section 2 of the act of November 3, 1893, "merchant" is defined as follows:

"The term 'merchant' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant." 28 Stat. 8.

While the testimony shows that Mar Wing Joh has owned an interest in two mercantile establishments at El Paso, and still re-

tains an interest in one of them, it is further shown, in the written stipulation of counsel, that he has not actively engaged in conducting the business, but that he has a third interest in a restaurant, of which he is the head cook, and that he has been cooking since the date of his certificate of residence, issued to him as a laborer in 1894. Tested by the plain provisions of the statute, he is not a merchant, but a laborer, and is entitled only to such rights and privileges as pertain to Chinese persons of his class. In re Ah Yow (D. C.) 59 Fed. 561; Lew Jim v. U. S., 14 C. C. A. 281, 66 Fed. 953; Lai Moy v. U. S., 14 C. C. A. 283, 66 Fed. 955; U. S. v. Yong Yew (D. C.) 83 Fed. 832; U. S. v. Chung Ki Foon (D. C.) 83 Fed. 143.

It is further insisted by counsel for the appellant that the latter is shown by the testimony to be a student. and it is therefore assumed that he is not within the prohibited class. Congress has clearly indicated by the sixth section of the act of July 5, 1884,[1] how Chinese persons, other than laborers, may lawfully enter the United States:

Such persons who may be entitled to come to this country (except diplomatic and other officers, who are exempted from the provisions of the act of congress by section 13), "and who shall be about to come to the United States, shall obtain the permission of and be identified as so entitled by the Chinese government, or of such other foreign government of which at the time such Chinese person shall be a subject, in each case to be evidenced by a certificate issued by such government, which certificate shall be in the English language. and shall show such permission, with the name of the permitted person in his or her proper signature, and which certificate shall state the individual, family and tribal name in full, title or official rank, if any, the age, height and all physical peculiarities. former and present occupation or profession, when and where and how long pursued. and place of residence of the person to whom the certificate is issued, and that such person is entitled by this act to come within the United States."

It is further provided that the certificate and the identity of the person named therein shall, before such person goes on board any vessel to proceed to the United States, be viséd by the indorsement of the diplomatic or consular representative of the United States, etc. And it is further provided that:

"Such certificate viséd as aforesaid shall be prima facie evidence of the facts set forth therein and shall be produced to the collector of customs of the port in the district in the United States at which the person named therein shall arrive, and afterward produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disproved by the United States authorities." 23 Stat. 116, 117.

By section 12 of the act it is provided:

"That no Chinese person shall be permitted to enter the United States by land without producing to the proper officer of customs the certificate in this act required of Chinese persons seeking to land from a vessel. And any Chinese person found unlawfully within the United States shall be caused

---

[1] Note by the Court: Section 6 of the act of 1884, above referred to, does not apply to Chinese merchants already domiciled in the United States, who, having left the country for temporary purposes, animo revertendi, seek to re-enter it on their return to their business and their homes. Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517.

to ·be removed therefrom to the country from whence he came, and at the cost of the United States, after being brought before some justice, judge or commissioner of a court of the United States and found to be one not lawfully entitled to be or to remain in the United States."

It is conceded by counsel that the appellant did not procure the certificate required by the act of congress prior to his departure from China, nor did he attempt to comply, in any respect, with the provisions of the act. Under the law the certificate was the sole evidence permissible to establish his right of entry. His entry, therefore, was unlawful, and his residence here is equally so; and it is made the imperative duty of the justice, judge, or commissioner to cause a Chinese person to be deported "if found to be one not lawfully entitled to be or to remain in the United States." The statutes above referred to effectually dispose of this case, and the ruling here announced finds abundant authority in its support. Wan Shing .v. U. S., 140 U. S. 424, 11 Sup. Ct. 729; U. S. v. Chu Chee, 35 C. C. A. 613, 93 Fed. 797; In re Li Foon (C. C.) 80 Fed. 881; In re Wo Tai Li (D. C.) 48 Fed. 668.

Counsel further insists that, should the appellant be deported to China, he would still have the right to return as a student, and his deportation would result merely in a useless expense to the government, and an unnecessary hardship upon the appellant. Whether he would be entitled to return to the United States admits, of serious question. The circuit court of appeals for the Ninth circuit in the case of U. S. v. Chu Chee, supra, held that the status of minor children, under the laws, was that of the father, and that "the policy of the exclusion acts is to prohibit the entry into the United States of the entire class of Chinese laborers as a class." If his right to return, however, should be conceded, it would still be the duty of the court to enforce the law. The plain, unambiguous language of the statute should not be disregarded because its enforcement would result in inconvenience, nor should its meaning be frittered away by judicial misconstruction to mitigate the supposed hardships of particular cases.

If the court has erred in the conclusions announced, the appellant may have the error corrected by the appropriate tribunal. U. S. v. Gee Lee, supra. For the reasons assigned, the order of deportation passed by the commissioner should be affirmed, and it is so ordered.