In re SEE HO HOW.

(District Court, N. D. California. April 12, 1900.)

No. 12,050.

PROCEEDING FOR DEPORTATION OF CHINAMAN—POWERS OF COMMISSIONER—CANCELLATION OF CERTIFICATE.

In a proceeding for the deportation of a Chinese person arrested as being unlawfully in the United States, the commissioner has no jurisdiction to cancel a certificate of residence issued to the defendant under the provisions of Act Nov. 3, 1893 (28 Stat. 7), and regular on its face, on the ground that it was procured by fraud; and, having found that defendant is possessed of such certificate, an order by the commissioner for his deportation is void, unless it is further found that defendant has, since the issuance of such certificate, forfeited his right to remain in the United States by departing therefrom without procuring from the collector a certificate entitling him to re-entry.

This was a proceeding by writ of habeas corpus by See Ho How, a Chinese laborer detained under an order of a commissioner for his deportation.

Bert Schlesinger, for petitioner.
Marshall B. Woodworth, Asst. U. S. Atty.

DE HAVEN, District Judge. See Ho How, a Chinese laborer, is before the court upon a writ of habeas corpus. It appears from the return to the writ that he is now in the custody of the United States marshal for this district, for the purpose of deportation to China, in execution of an order or judgment of a United States commissioner. The judgment first recites that See Ho How was arrested and brought before the commissioner upon a verified complaint, in which he was charged with having been found unlawfully in the United States, and then proceeds with the following recitals, showing the facts found by the commissioner, and his judgment thereon:

"Whereas, an examination was thereafter had by me of said 'See 'Ho How, alias Hoy Tim, upon the said charge, from which examination, and from the evidence adduced before me, it appears to me that the said See Ho How, alias Hoy Tim, is, by race, color, language, and dress, a Chinese person, and a laborer by occupation; and, whereas, the said See Ho How, alias Hoy Tim, has offered in defense to said charge a certificate of residence issued by O. M. Welburn, collector of internal revenue, First district of California, per F. C. Josselyn, deputy, on April 17, 1894, under amendatory act of November 3, 1893, to See Ho How, and numbered 86,376; and whereas, from the said evidence adduced before me, it appears to me that said certificate of residence was procured to be issued by fraud and misrepresentations, and by false testimony; and whereas, said See Ho How, alias Hoy Tim, has failed to establish by affirmative proof, to my satisfaction, his lawful right to remain in the United States; and whereas, said See Ho How, alias Hoy Tim, has not made it appear to me that he is a subject or citizen of any other country than China; and whereas, from the foregoing facts, I find and adjudge said certificate of residence to be invalid and void and of no effect, and said See Ho How to be unlawfully within the United States: Now, therefore, I order that said certificate of residence aforesaid be canceled, and that See Ho How, alias Hoy Tim, be removed from the United States to China."

It is apparent from these recitals that the commissioner found as a fact that the petitioner is in possession of a certificate of residence issued to him by the proper officer, and the judgment of deportation is based solely upon the finding that such certificate was "procured to be issued by fraud and misrepresentation and by false testimony." In my opinion, the commissioner was without jurisdiction to find or adjudge that the issuance of the certificate referred to was procured by fraud. Section 1 of the amendatory act of November 3, 1893, relating to the exclusion of Chinese (28 Stat. 7), made it the duty of all Chinese laborers who were residents of the United States on May 5, 1892, and then entitled to remain in the United States, to apply within six months after the passage of that act to the collector of internal revenue of their respective districts for a certificate of residence; and it was further provided that any Chinese laborer found in the United States without such certificate of residence after the expiration of said six months should be deemed and adjudged to be unlawfully in the United States, and deported therefrom, unless, when arrested and taken before a United States judge, he should establish clearly to the satisfaction of such judge that he was unable to procure such certificate by reason of accident, sickness, or other unavoidable cause, and further show by at least one credible witness, other than Chinese, that he was a resident of the United States on May 5, 1892; and it was provided in section 2 that the certificate of residence required by that act "shall contain the photograph of the applicant, together with his name, local residence, and occupation, and a copy of such certificate, with a duplicate of such photograph attached, shall be filed in the office of the United States collector of internal revenue of the district in which such Chinaman makes application." It is very clear that under this statute each collector of internal revenue was charged with the duty of ascertaining and determining whether the Chinese person applying to him for the certificate of residence provided for was entitled thereto, and I am entirely satisfied that, in any collateral inquiry concerning the right of its holder to remain in the United States, such certificate is con-

clusive evidence of the facts recited therein. The issuance of such a certificate is the solemn act of the government, of which a permanent record is made, and is intended to furnish evidence of the right of the holder to remain in the United States. The right which the certificate confers is a valuable one, of which the holder can only be deprived by the judgment of a court of equity, in a direct action brought by the United States for the purpose of annulling it, or in a proceeding for deportation, by proof that since its issuance the holder has forfeited his right to remain in the United States by departing therefrom without procuring from the collector of customs of the district from which he departed a certificate entitling him to re-enter the United States, as provided in article 2 of the treaty of March 17, 1894, between the United States and China, and the regulations adopted by the treasury department for the purpose of carrying out the provisions of that article. As the commissioner did not have jurisdiction to adjudge that petitioner's certificate was procured by fraud, his finding in relation to such fraud, and so much of the judgment as directs the cancellation of the certificate, must be entirely disregarded. The question then arises whether, in view of the other facts found, the judgment of deportation is valid, or whether it is in excess of the jurisdiction of the commissioner, and for that reason void. In the case of In re Bennett (D. C.) 84 Fed. 327, it is said:

"In any case where it appears from the record that the court had no authority to render judgment against a defendant, such judgment is void; and where the record shows a second prosecution, trial, and conviction of an offense of which the defendant has once been acquitted or convicted, such judgment is void."

And upon precisely the same principle the judgment of deportation in this case must be held void, in the extreme sense, because it appears upon the face of the judgment that the petitioner is in possession of an uncanceled certificate of residence, which, in the absence of a finding that he subsequently departed from the country, and thereby forfeited the right conferred by such certificate, entitles him to remain in the United States. The commissioner having found facts which, under the law, show that petitioner has the right to remain in the United States, the judgment that he be deported is absolutely void,—as much so as would be a judgment of conviction upon a verdict of not guilty. The petitioner is discharged.