In re TOM HON.

(District Court, N. D. California. September 6, 1906.)

No. 9,867.

1. ALIENS—CHINESE—EXCLUSION—REGISTRATION—JUDGMENT.

A judgment in habeas corpus proceedings, remanding a Chinese person to the custody of the master of a vessel in which he immigrated, for deportation, was vacated by the subsequent passage of Act Cong. May 5, 1892, c. 60, 27 Stat. 25, as amended by Act Nov. 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320], providing for the registration of Chinamen entitled to remain in the country and the registration of petitioner thereunder.

2. SAME—REGISTRATION—EFFECT—COLLATERAL ATTACK.

Act Cong. Nov. 3, 1893, c. 14, § 6, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1321], requires Chinese laborers entitled to remain in the United States before the passage of the Chinese exclusion act to apply to the collector of internal revenue of their respective districts within six months for certificates of residence, and that any Chinese laborer refusing so to register should be deemed and adjudged unlawfully within the United States, and might be arrested, etc. Held that, where a Chinese person was duly registered under such act as a native-born citizen, such registration was not subject to collateral attack in a proceeding to enforce a judgment of deportation rendered against him before the registration law took effect.

Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley and Frank A. Duryea, Asst. U. S. Attys.

McGowan & Wright, for respondent.

WHITSON, District Judge. Tom Hon, a Chinaman, arrived at San Francisco aboard the steamship Oceanic on or about August 30, 1890. He was refused admission, and thereupon filed his petition in this court for a writ of habeas corpus, claiming to be a native-born citizen. The writ was duly granted, and the matter was set for hearing on the 3d day of September, 1890, at which time he was brought

into court, and, pending the hearing, which was referred to the commissioner, he was admitted to bail in the sum of $1,500. On the day fixed he failed to appear before the commissioner, who found that he was not entitled to land in the United States, and reported his finding to that effect. This finding was affirmed, and a judgment entered for his remand to the custody of the master of the vessel, and for his deportation to China. He was not apprehended under that judgment, but has since continuously remained in the United States. In August, 1906, in contemplation of a trip to China, he made application to the clerk of the court for a certified copy of the order, which he alleges he supposed had been made, discharging him from custody, to be used by him as evidence of his right to return. The clerk having identified him as the Chinaman who had been ordered deported by the judgment rendered in the habeas corpus proceeding in 1890, he was arrested by the marshal, at the suggestion of the clerk, and taken before the United States commissioner, upon the charge of being in the country contrary to the acts of Congress relating to the admission of Chinese persons. That matter is now pending before the commissioner. The present controversy grows out of the application for an alias order based upon said judgment. This is resisted upon two grounds: (1) That the judgment rendered in habeas corpus is not res judicata as to the issues involved. (2) That the petitioner in the former proceeding, and who now resists the application, was on the 25th day of April, 1894, duly registered under Act May 5, 1892, c. 60, 27 Stat. 25, as amended by Act Nov. 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320], and now holds a certificate of residence and is entitled to remain in the United States by virtue of such registration and certificate, notwithstanding the prior judgment of deportation.

As to the first proposition, counsel have argued that the court had no jurisdiction to order the deportation of the petitioner upon his application for a writ of habeas corpus, and that the judgment rendered upon that application must be regarded as a denial of the petition, and, in so far as it directs deportation, as in excess of jurisdiction. If the rule for which they contend be admitted, namely, that the judgment rendered in 1890 is not conclusive upon the court now, it may be observed that it does not necessarily follow, regarding it purely as a denial of the application for a discharge, that it would not authorize the remanding of the defendant to the vessel, and to the custody of the person commanding such vessel, in this proceeding, which is in reliance upon it. To that extent, if the judgment still subsists, it would perhaps be incumbent upon the court to enforce it.

The effect of a certificate of residence upon the status of one securing it is vital here. It is not to be overlooked that Congress could have repealed the exclusion acts altogether; that the repeal of such laws would have entitled Chinamen here at the time to remain, and those not here to have entered the country; that it is only by virtue of the prohibitory acts that Chinese are excluded. It cannot be doubted that Congress could have expressly provided that all persons under judgment of deportation at the time of the adoption of the legislation under consideration should be entitled to register, and upon such

registration to remain in the country; and this by virtue of its plenary power to deal with the subject. A judgment of deportation could not stand as against a repeal of the laws which exclude Chinese. One against whom such a judgment had been rendered could, in case of repeal of the exclusion acts, insist that the judgment failed with the repeal of the law which authorized it. It is a familiar rule that the repeal of a statute providing for the punishment of criminal offenses precludes prosecution for those committed prior to its repeal, unless there is a saving clause in the repealing act. Full power is vested in Congress to legislate upon the subject, either by repeal of all exclusion acts or the modification of them, and this carries with it the incidental authority to relieve persons, conditionally or unconditionally, against whom those charged with the execution or enforcement of the laws may have proceeded in pursuance of existing provisions. We are to look for the legislative intent by an examination of the language used, indulging such necessary implications as the rules of construction justify. The collector of internal revenue was empowered to consider and pass upon applications for registration. Jurisdiction was conferred upon him. The courts were not invested with power in the first instance to issue certificates, nor with supervisory control on appeal. It was only where, in case of accident, sickness, or unavoidable cause, one had been unable to secure the certificate required by law, that they had any discretion in relation to the matter. With these exceptions, which could only incidentally arise in cases being prosecuted for deportation, the control of registration and the issuing of certificates was reserved for the executive branch. The right to decide presupposes the duty of hearing evidence or making other investigation. After the inquiry, of whatever nature the collector saw fit to make, he passed upon the qualifications of those seeking to register, and issued or refused his certificate accordingly. To give efficacy to the legislation, some force and effect must be given to the certificate which he was authorized to issue. The purpose of Congress in requiring registration being to supply a record from which the officers of the government could ascertain by reference to it those of our Chinese population who were rightfully here, and therefore entitled to remain, it is manifest that the tribunal created for that purpose had full power. This was made clear by the act of 1893, a quotation from section 6 of which reads:

"And it shall be the duty of all Chinese laborers within the limits of the United States who are entitled to remain in the United States before the passage of the act to which this is an amendment to apply to the collector of internal revenue of their respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States who shall neglect, fail, or refuse to comply with the provisions of this act and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested," etc. 28 Stat. 7 [U. S. Comp. St. 1901, p. 1321].

Attention has been called to that portion of the section which reads, "who are entitled to remain in the United States," upon which the argument is based that, the defendant not being at the time entitled

to remain, the certificate was issued to one not within the provisions of the law. But, while it was not intended that any Chinese person not entitled to remain in the country should have a certificate, it was intended that the collector of internal revenue should pass upon all applications, and that his certificate, so long as in force, should be conclusive evidence of that right. The rule was prescribed for the government of the collector, and it was for him to find who were entitled. Congress made a new departure, and defined the method by which Chinese in the United States might obtain evidence of their right to be in the country, and this was apparently intended as a starting point, and the courts have no jurisdiction to collaterally assail a conclusion reached by the collector in this regard. This can only be done in a direct proceeding to cancel the certificate. The following from an opinion of Judge De Haven lucidly explains the soundness of this view:

"It is very clear that under this statute each collector of internal revenue was charged with the duty of ascertaining and determining whether the Chinese person applying to him for the certificate of residence provided for was entitled thereto, and I am entirely satisfied that, in any collateral inquiry concerning the right of its holder to remain in the United States, such certificate is conclusive evidence of the facts recited therein. The issuance of such certificate is the solemn act of the government, of which a permanent record is made, and is intended to furnish evidence of the right of the holder to remain in the United States. The right which the certificate confers is a valuable one, of which the holder can only be deprived by the judgment of a court of equity, in a direct action brought by the United States for the purpose of annulling it, or in a proceeding for deportation, by proof that since its issuance the holder has forfeited his right to remain in the United States by departing therefrom without procuring from the collector of customs of the district from which he departed a certificate entitling him to re-enter the United States, as provided in article 2 of the treaty of March 17, 1894, between the United States and China, and the regulations adopted by the Treasury Department for the purpose of carrying out the provisions of that article." In re See Ho How (D. C.) 101 Fed. 115.

This decision is abundantly sustained by the reasoning in United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, although the identical question was not before the court.

It has been suggested that, inasmuch as the judgment is valid upon its face, the defendant should under it be remanded to the vessel, and be left to his remedy by writ of habeas corpus, whereby, if his contention is correct, he could be immediately discharged. Whether he could be so discharged by that method, in the light of the Ju Toy Case, it may be confessed is open to doubt; but certainly, when a national court has jurisdiction over a Chinese person who claims to be a native-born citizen of the United States, who has been continuously in the country for the past 16 years, and who has lived here most of his life, it will not subject him to the hazard of summary banishment upon a judgment which has been annulled by congressional legislation, without at least giving him an opportunity to present proofs of his citizenship and to establish the right to live in his native land.

For the reason that in the present state of the record it appears that there is no subsisting judgment, the application will be denied. This ruling is strictly limited to the application before the court. The af-

fidavit attached to and made a part of the protest is not controverted. What may develop upon the hearing before the commissioner it would be improper at this time to anticipate.