## UNITED STATES v. LIM JEW.

(District Court, N. D. California. December 15, 1910.)

1. ALIENS (§ 32*)—CHINESE PERSONS—RIGHT TO ENTER UNITED STATES.
   Where a Chinese person was found lawfully entitled to remain in the United States in 1888 on the ground that he had resided in the United States prior to November 18, 1880, and was within Act July 5, 1884, c. 220, 23 Stat. 115 (U. S. Comp. St. 1901, p. 1305), providing that Chinese laborers in the United States on November 17, 1880, or who might have come into the United States before the expiration of a certain date, could on proper identification be permitted to land, etc., his right to re-enter the United States after having made a subsequent visit to China was not the same right as had been previously determined in his favor; and hence such determination was not conclusive of his right to re-enter.
   [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 93–95; Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—DEPORTATION—JUDGMENT—ESTOPPEL.
   Where, in a prior proceeding to determine the right of a Chinese person to enter the United States, it was found that he had been a resident of the United States prior to November 18, 1880, and hence was entitled to re-enter as provided by Act Cong. July 5, 1884, c. 220, 23 Stat. 115 (U. S. Comp. St. 1901, p. 1305), but there was no determination in that proceeding of the place of his nativity, and it did not appear that such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

question was in issue in that case, such determination did not estop the United States to thereafter deny in a subsequent deportation proceeding after an attempted re-entry into the United States that he was not a natural born citizen.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 93-95; Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—CHINESE PERSONS—DEPORTATION—DEPARTMENT OF IMMIGRATION—DECISION—FINAL ADJUDICATION.

Act Cong. Aug. 18, 1894, c. 301, 28 Stat. 372, 390 (U. S. Comp. St. 1901, p. 1303), provided that in every case where an alien is excluded from admission a decision of the appropriate immigration or customs officers, if adverse, shall be final unless reversed on appeal by the Secretary of the Treasury. Act March 3, 1903, c. 1012, § 25, 32 Stat. 1220, provided for the creation of boards of inquiry to determine whether aliens held for examination should be allowed to land, or be deported, and declared that decisions of such boards should prevail and be final, but that either an alien or any dissenting member of the board may appeal to the Secretary of the Treasury whose decision should be final. By Act Feb. 14, 1903, c. 552, 32 Stat. 825 (U. S. Comp. St. Supp. 1909, p. 87), jurisdiction of the Treasury Department was transferred to the Department of Commerce and Labor, and Act March 3, 1903, § 25, was repealed by Act Feb. 20, 1907, c. 1134, § 43, 34 Stat. 911 (U. S. Comp. St. Supp. 1909, p. 469), section 25 of which provided that, where an alien is excluded, the decision of the immigration officers, if adverse, should be final unless reversed on appeal to the Secretary of Commerce and Labor, but that nothing in the section should be construed to admit of any appeal in the case of an alien rejected as provided for in section 10 of the act. *Held*, that where immigration commissioners permitted a Chinese person to land on the theory that he was legally in the country prior to November 18, 1880, and was therefore entitled to enter under Act July 5, 1884, c. 220, 23 Stat. 115 (U. S. Comp. St. 1901, p. 1305), the decision of the Department of Immigration should not be regarded as final adjudication of the immigrant's nativity, since the act of 1907 clearly expresses an intention that the decisions of the immigration officials permitting aliens to land are not conclusive when questioned in the federal courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 93-95; Dec. Dig. § 32.*

What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Chinese deportation proceedings by the United States against Lim Jew. From a deportation order, defendant appeals. Affirmed.

Samuel M. Shortridge and Geo. A. McGowan, for appellant.
Robt. T. Devlin, U. S. Atty.

FARRINGTON, District Judge. Lim Jew went to China in 1905. On his return in 1908, he presented a certificate in which he was described as a native-born citizen of the United States. After investigation, which included an examination of witnesses, the Commissioner of Immigration ordered defendant admitted into the United States as a native-born citizen. In the following year a United States immigration inspector filed a complaint before E. H. Heacock, United States commissioner for the Northern District of California at San Francisco, charging Lim Jew with a violation of the federal statute, which forbids the coming of Chinese persons into the United States. After a full hearing, the commissioner found defendant to be a Chinese person, and a native of China; that he is, and ever since his

birth has been, an alien; that he departed from the United States in 1905, returned in September, 1908, and at the time of his arrest was in this district; that he did not at the time of his departure procure a return certificate under the exclusion laws, nor did he at any time procure from any person or any officer a certificate of any kind, showing that he was entitled to return to the United States. From an order of deportation based on these findings, Lim Jew has appealed to this court, and has been heard upon an agreed statement of facts.

Defendant claims that he was born in San Francisco, and consequently that he was and is rightfully within the state of California. The agreed statement, however, amply supports the finding of the commissioner that Lim Jew is not a native-born citizen. But defendant urges that his nativity is no longer open to question. It was set at rest by a decision rendered in the United States Circuit Court for this district August 23, 1888; and also by the decision of the Department of Immigration, rendered in 1908, referred to in the first paragraph of this opinion.

The agreed statement shows that a petition for a writ of habeas corpus was filed in the Circuit Court for this district in the Matter of Lim Jew August 18, 1888. The judgment rendered five days later recited that Lim Jew "had been a resident of the United States prior to November 18, 1880, and hence was entitled to re-enter the United States. No declaration of the defendant appears of record in that matter as to the place of his nativity." The applicant was then discharged, and allowed to remain in the United States. There is nothing in the stipulated facts from which it appears that any issue as to Lim Jew's nativity was raised. Apparently the judgment of August 23, 1888, was based on the fact that Lim Jew resided in the United States prior to November 18, 1880; and it went no further than to declare that he was entitled at that time to re-enter the United States.

[1] Is the government estopped by this judgment? No question is here raised as to its correctness. The act of July 5, 1884 (23 Stats. at L. p. 115), provided that Chinese laborers who were in the United States November 17, 1880, or who might have come into the 'United States before the expiration of a certain date, could on proper identification be permitted to land. If Lim Jew was duly identified as such a laborer, it was unnecessary to prove that he was born in the United States in order to secure his admission in 1888. The issue in that proceeding was defendant's right to remain in the United States at that time. As to that issue, the judgment is conclusive, and forecloses all further controversy.

After another visit to China defendant's present right to remain in the United States is at issue. This is not the same right which was determined by the court in 1888. A Chinese alien who was in the United States at that time lawfully may now find it impossible, under the law, to re-enter our territory, because he has failed to procure the proper certificate of identification, or because he has in some other way forfeited his right. The rule applicable to cases like this is thus stated in Russell v. Place, 94 U. S. 606, 24 L. Ed. 214:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit is conclusive as

to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as for example if it appear that several distinct matters may have been litigated, upon one or more of which judgments may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the principal point involved and determined."

See, also, Delaware, etc., Co. v. Kutter, 147 Fed. 51, 59, 77 C. C. A. 315; De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816, 39 L. Ed. 956.

[2] Inasmuch as it does not appear that defendant's nativity was at issue in the 1888 case, or that it was involved in that judgment, the government is not now estopped thereby from denying that Lim Jew is a native of the United States.

[3] I am also of the opinion that the decision of the Department of Immigration cannot be regarded as a final adjudication of defendant's nativity. The act of August 18, 1894 (28 Stats. at L. pp. 372, 390), provided that in every case where an alien is excluded from admission under any law or treaty now existing, or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal by the Secretary of the Treasury. The act of March 3, 1903 (32 Stats. at L. p. 1220, § 25), provided for the creation of boards of inquiry, to determine whether aliens duly held for examination shall be allowed to land, or be deported, and declares that "decisions of such boards shall prevail and be final," but either the alien or any dissenting member of the board may appeal to the Secretary of the Treasury, "whose decision shall then be final." By the act of February 14, 1903 (32 Stats. at L. p. 825), the jurisdiction of the Treasury Department was transferred to the Department of Commerce and Labor. Section 25 of the act of March 3, 1903, was repealed by the act of February 20, 1907 (34 Stats. at L. p. 911). In section 25 of this repealing act it is provided:

"That in every case where an alien is excluded from admission into the United States, under any law or treaty now existing or hereafter made, the decision of the appropriate immigration officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of Commerce and Labor; but nothing in this section shall be construed to admit of any appeal in the case of an alien rejected as provided for in section ten of this act."

Thus it appears that originally the decision of the appropriate immigration officers was final, if adverse to the admission of the alien. By the next amendment the decision was final whether adverse or favorable; and by the act in force since February 20, 1907, it is final only when adverse to the alien.

In Pearson v. Williams, 202 U. S. 281, 284, 26 Sup. Ct. 608, 50 L. Ed. 1029, the Supreme Court apparently regards the act of March 3, 1903, as extending the finality of the ultimate decision of the immigration officers to every case where it is questioned in court; but

holds that the Secretary of Commerce and Labor is not bound by the decision of a board of special inquiry permitting an alien to land. When the last act was passed, Congress certainly intended to make a distinction between decisions admitting and decisions excluding aliens seeking to enter the country. In one case the decision is final; in the other it is not. "The board is an instrument of the executive power, not a court. It is made up, as we have mentioned, of the immigration officials in the service, subordinates of the Commissioner of Immigration, whose duties are declared to be administrative by section 23. Decisions of a similar type long have been recognized as decisions of the executive department, and cannot constitute res judicata in a technical sense."

In Re Li Sing, 86 Fed. 896, 30 C. C. A. 451, the facts were these: Li Sing, after a visit to China, was permitted by the collector of customs at Malone, N. Y., to re-enter this country on a certificate which represented that he was a wholesale grocer. Some four months later he was arrested on complaint of the Chinese inspector for the Port of New York, taken before United States Commissioner Shields, and ordered deported. On appeal from an order dismissing the writ of habeas corpus, which had been allowed by the Circuit Court for the Southern District of New York upon Li Sing's petition, the Circuit Court of Appeals held, under the act of August 18, 1894, that the decision of the Collector of Customs was not conclusive upon the federal courts. This decision was subsequently affirmed by the Supreme Court in Li Sing v. United States, 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634.

In a similar case, In re Li Foon (C. C.) 80 Fed. 881, it was claimed that the decision of the Collector of Customs in favor of the right of a Chinese alien to enter is final. The court said:

"Where the decision of the executive officer, such as the collector, is not made final either by express language or by necessary implication, the courts will adjudicate upon the question of his being entitled to enter, when that question comes before them, unhampered by any decision of the executive officer."

The same rule is very clearly stated by Judge De Haven in United States v. Lau Sun Ho (D. C.) 85 Fed. 422. The facts passed upon by the Supreme Court in United States v. Ju Toy, 198 U. S. 253, 261, 25 Sup. Ct. 644, 49 L. Ed. 1040, arose while the act of August 18, 1894, was in force. That act, as we have seen, declared the decision of the immigration officials final, if adverse to the alien. The court held that a writ of habeas corpus granted in behalf of a Chinese alien should be dismissed where the proper immigration officials had denied his application for admission, and the denial was affirmed on appeal by the Secretary of Commerce and Labor.

In re Tom Hon (D. C.) 149 Fed. 842, and In re See Ho How (D. C.) 101 Fed. 115, cited by defendant in this connection, are beside the issue. These cases involve, not the conclusive nature of a decision rendered by immigration officials admitting an alien, but they determine that a certificate of residence issued to a Chinaman by a collector of internal revenue is conclusive on collateral attack as to the facts therein stated, and can only be canceled in a direct action brought

by the United States for that purpose. In Leung Jun v. United States, 171 Fed. 413, 96 C. C. A. 369, it appeared that there had been a full hearing before the United States commissioner, and that evidence was introduced showing defendant was born in this country. Such a decision was res adjudicata as to the nativity of Leung Jun.

In the case at bar it does not appear.that any question was raised at the hearing as to defendant's place of birth. The act of 1907 clearly expresses an intention on the part of Congress that decisions by immigration officials permitting aliens to land are not to be regarded as conclusive when questioned in the federal courts.

The decision of Commissioner Heacock is therefore affirmed.