## LEW QUEN WO v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,853.

**1. ALIENS (§ 24*)—CHINESE—EXCLUSION—"LABORERS."**

Chinese Treaty, Nov. 17, 1880, 22 Stat. 826, and Act May 6, 1882, c. 126, 22 Stat. 58 (U. S. Comp. St. 1901, p. 1305), in aid thereof, provided for the exclusion of Chinese laborers, and the Geary act (Act Cong. May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319]), defined "Chinese laborers" to include both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrying, and those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation. *Held*, that a Chinese person owning a $500 interest in a general merchandise store, but operating a fruit farm as a tenant and selling the fruit grown thereof by his own labor, was a "laborer," and not entitled to enter or remain in the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–80; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 5, pp. 3952–3968; vol. 8, p. 7700.]

**2. ALIENS (§ 32*)—CHINESE PERSONS—EXCLUSION—IMMIGRATION COMMISSIONER'S ORDER—COMMISSIONER OF ALIENS—CONCLUSIVENESS.**

Since there is no statutory provision that a decision of the appropriate immigration or customs officer favorable to the admission of a Chinese alien is conclusive on the United States, the admission of a Chinese alien as a merchant is not conclusive against the United States on the application of the alleged merchant's son to enter, and did not prevent the son's exclusion on the ground that the father, while having a financial interest in a mercantile establishment, was in fact a laborer engaged in fruit culture as a tenant.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

**3. ALIENS (§ 29*)—DEPORTATION—CHINESE PERSONS—PROCEEDINGS.**

Where the complaint in deportation proceedings against a Chinese person duly alleged that he was a Chinese manual laborer within the United

*For other cases, see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

States without a certificate of residence, it was not material to the right of the government to deport him that he came into the United States at a time when it was impossible to obtain a certificate of residence.'

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 91; Dec. Dig. § 29.*]

Appeal from the District Court of the United States for the Northern District of California.

Deportation proceedings by the United States of America against Lew Quen Wo. From an order for judgment of deportation, affirmed by the District Court, defendant appeals. Affirmed.

On April 1, 1909, the appellant was arrested on the complaint of an immigration inspector on the charge of being a Chinese manual laborer within the limits of the Northern district of California without the certificate of residence required by the acts of Congress. Upon a hearing before the United States commissioner, the latter found that the appellant was a native and subject of the Chinese Empire; that on July 30, 1907, he arrived at the port of San Francisco, and was landed by the commissioner of immigration as the minor son of Lew Fong, who was found by the immigration officers to be a Chinese merchant having an interest of $500 in a Chinese general merchandise store in Alameda, Cal., and that he acted as salesman in conducting the business of said firm; that, notwithstanding such finding of the immigration officers, the United States commissioner found from the testimony produced before him that at the time of the entry and landing of the appellant, and at least one year next preceding that date, and from that time until the time of the hearing, Lew Fong, the father of the appellant, "did engage in the performance of manual labor other than was necessary in the conduct of his business as such merchant, in this, to wit, that he was in the neighborhood of Ophir in this district, actually engaged in farming, orcharding, plowing, raising, and marketing fruit, and performing all kinds of manual labor in the culture, raising, and marketing of fruit; that said Lew Fong was the lessee of the premises on which he performed such labor and performed the same upon his own account; and that his mercantile status is not otherwise modified." Thereupon an order and judgment of deportation was entered from which an appeal was taken to the District Court, and that court upon the record and a stipulation of the facts affirmed the judgment of the commissioner. The appellant appeals to this court.

George A. McGowan and Alfred L. Worley, for appellant.
Robert T. Devlin, U. S. Atty., and A. P. Black, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that Lew Fong, the father of the appellant, was not, at the time when the appellant was permitted to land in the United States, a laborer within the meaning of the exclusion acts (Act Nov. 3, 1893, c. 14, § 2, 28 Stat. 8 [U. S. Comp. St. 1901, p. 1322]), for the reason that he was a merchant and was not engaged in manual labor for wages or for hire, but worked upon his own account, and not as the employé of any one, in farming and raising and marketing fruit on land which he had rented. While some of the earlier decisions under the Chinese exclusion laws give color to the appellant's contention that the meaning of the word "laborer" as used in those laws is one who works for another for wages (In re Ho King [D. C.] 14 Fed. 724), the later decisions are harmonious in holding that

the term should not be so restricted. This is held in view of the language of the treaty to give force to which the legislation was enacted, and in view of the more recent enactments of Congress. In Lee Ah Yin v. United States, 116 Fed. 614, 54 C. C. A. 70, we held, upon a consideration of the memoranda submitted and discussed in the negotiations between the high contracting powers which culminated in the adoption of the treaty of 1880 (Treaty with China, Nov. 17, 1880, 22 Stat. 826), and the subsequent legislation of Congress to carry out the provisions thereof, that the words "Chinese laborers" as used were intended to designate all immigation to the United States from China other than that of the privileged classes, who were, by the terms of the treaty, permitted to come for the purpose of teaching, trade, travel, study, and curiosity, and we held that the Geary act, approved May 5, 1892 (Act May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319]), adopted the words "Chinese laborers" with the meaning attached thereto by the treaties.

That Chinese laborers who work for hire only are not the only laborers excluded within the meaning of the acts of Congress is shown by Act Nov. 3, 1893, c. 14, § 2, 28 Stat. 8 (U. S. Comp. St. 1901, p. 1322), in which it was declared that the words "laborer or laborers" "shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying or otherwise preserving shell or other fish for home consumption or exportation." By this statute, which was intended to make certain as included within the designation of laborers those whose occupation might, in some aspects, be regarded as belonging to the mercantile class, Congress enumerated as within the term "laborers" those who were working upon their own account and not for hire in certain mentioned occupations, the product of which was sold to others. The act does not declare, and its meaning is not to say, that those only who are engaged in those occupations so specified shall be deemed laborers. It was perhaps impossible to enumerate all the classes of occupations of the general nature of those mentioned, but the act clearly intends to make a distinction between merchants who buy and sell goods at a fixed place of business, and all those who sell goods which are the product of their own labor, or who sell goods which they have purchased to vend at no fixed place of business. Now, the farmer or fruit grower, who leases land and tills the same and labors in the production of a crop which he sells to others, is engaged in an occupation similar to that of those who are engaged in mining, fishing, or drying fish for home consumption or exportation. Lew Fong, as the owner of an interest of $500 in a general merchandise store, would have been a merchant within the meaning of the acts, and his status as a merchant would not have been affected had he performed only manual labor such as might have been necessary in the conduct of his business as a merchant; but here the labor which he performed was aside and entirely distinct from his business as a merchant, and therefore, at the time when the appellant was landed in the United States, Lew Fong was not one of the privileged class

of persons who are entitled to enter the United States, and therefore the appellant was not entitled to admission.

It has been held that a Chinese who kept a restaurant and a lodging house was a laborer (United States v. Chung Ki Foon [D. C.] 83 Fed. 143; In re Leung, 86 Fed. 303, 30 C. C. A. 69); that a Chinese holding an interest in a mercantile firm, but who was also a cook in a restaurant of which he was part owner, was a laborer. (Mar Bing Guey v. United States [D. C.] 97 Fed. 576); that a Chinese merchant who worked in a laundry was a laborer (United States v. Yong Yew [D. C.] 83 Fed. 832); that a Chinese who during half his time was engaged in cutting and sewing garments for sale by a firm in which he was a member was a laborer (Lai Moy v. United States, 66 Fed. 955, 14 C. C. A. 283); that a Chinese alien who owned an interest in a mercantile firm, but was engaged in operating a laundry and was part owner of a restaurant, was a laborer (United States v. Yee Gee You, 152 Fed. 157, 81 C. C. A. 409).

It is urged that the order of the commissioner of immigration admitting the appellant into the United States estops the government to deny the legality of his entry, and constitutes a bar to this proceeding, and reference is made to the language of the opinion in Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, in which the court sustained the finality of the decision of the immigration officers upon a hearing concerning the right of a Chinese to land in the United States, and said that thereafter the merits of the case were not open. But that case, and other decisions of the Supreme Court, go no further than to hold that the right of a Chinese applying for admission into the United States is determinable by the proper immigration authorities, that their decision when adverse to the applicant, and the hearing has been properly had, and the applicant's remedy has been exhausted upon an appeal to the Secretary of Commerce and Labor, is final, and there is no right of recourse to the courts. The court in so holding gave effect to the statute of August 18, 1894 (Act Aug. 18, 1894, c. 301, 28 Stat. 390 [U. S. Comp. St. 1901, p. 1303]), which provides that the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final unless reversed on appeal to the Secretary of the Treasury. There is no statutory provision that the decision, if favorable to the applicant for admission, shall be, final. The decisions have been to the contrary. United States v. Lau Sun Ho (D. C.) 85 Fed. 422, and cases there cited; Mar Bing Guey v. United States (D. C.) 97 Fed. 576. Nor is the certificate of identity which, was issued to the appellant after the commissioner of immigration, had passed upon his right to admission, an instrument of such effect as to stand in the way of his deportation. It is not like the certificate of residence provided for in the act of 1893, which defined the method by which Chinese in the United States might obtain evidence of their right to remain. Those certificates were registered as the solemn act of the government, and were intended to furnish evidence of the right of the holders thereof to remain in

the United States, and to be conclusive evidence of that right, and they are not subject to collateral attack. In re See Ho How (D. C.) 101 Fed. 115; In re Tom Hon (D. C.) 149 Fed. 842. The object of the exclusion acts, as Mr. Justice Field said in Re Ah Sing (C. C.) 13 Fed. 286, was not to expel Chinese laborers already in the United States, but to prevent the further immigration of Chinese laborers.

It it contended that the appellant could not lawfully be deported upon a complaint which charges him with being a Chinese manual laborer in the United States without the certificate of residence required by the act of Congress, etc., for the reason that he did not come into the United States until after the expiration of the period within which Chinese laborers were permitted to register. But the complaint clearly defined the status of the appellant and truly stated that he was a Chinese manual laborer within the United States without a certificate of residence, and it was immaterial that he came to the United States at a time when it was impossible to obtain a certificate of residence. The evidence sustained the charge of the complaint, and there was no error in the judgment of the District Court that the appellant be deported.

The judgment is affirmed.