## UNITED STATES v. JEW SUNG GWONG.

(District Court, D. Oregon. April 10, 1916.)

No. 7046.

1. ALIENS ☞32(8)—DEPORTATION OF CHINESE—EVIDENCE.

In proceedings for deportation of a Chinese, evidence *held* to show that defendant came to this country while a minor with an uncle who was a contractor, and not with another uncle who was a merchant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ☞ 32(8).]

2. ALIENS ☞23(1)—EXCLUSION OF CHINESE—RIGHT TO ENTER—MINOR.

A Chinese boy seven years of age, who came to this country with an uncle and under his charge, should be given the status of the uncle, and permitted to enter without a certificate, if the uncle was a merchant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 81; Dec. Dig. ☞ 23(1).]

3. ALIENS ☞24—EXCLUSION OF CHINESE—RIGHT TO ENTER—"CHINESE LABORER"—CONTRACTOR.

A Chinese contractor is a Chinese laborer, within the Exclusion Acts (Act May 6, 1882, c. 126, 22 Stat. 58; Act May 5, 1892, c. 60, 27 Stat. 25 [Comp. St. 1913, §§ 4315–4323]; Act Nov. 3, 1893, c. 14, 28 Stat. 7), and not entitled to enter, since "Chinese laborer," in those acts, includes all immigrants from China except the designated privileged classes.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–78; Dec. Dig. ☞24.

For other definitions, see Words and Phrases, First and Second Series, Chinese Laborer.]

Proceeding by the United States against Jew Sung Gwong, alias J. S. Song, alias Joe, for deportation. From an order of the United States commissioner, directing that defendant be deported, defendant appeals. Affirmed.

Seneca Fouts and A. Walter Wolf, both of Portland Or., for appellant.

Clarence L. Reames, U. S. Atty., and Robert R. Rankin, Asst. U. S. Atty., both of Portland, Or.

WOLVERTON, District Judge. This case is here upon appeal from an order of the United States commissioner directing that the defendant be deported. The defendant is charged with being unlawfully within the United States, he being a citizen of the republic of China, and having no certificate of registration or other document or lawful authority entitling him to remain within the United States, being also a laborer, and not belonging to the excepted class of Chinese persons entitled to enter the United States as provided by law.

[1] The defendant probably entered the United States about the year 1890, when he was of about the age of 7 years, landing at San Francisco and coming from there to Portland. He probably came with an uncle, Yung Suey. At the time he had another uncle living in Portland, who was then a merchant engaged in business on Second street. The defendant himself has made so many contradictory statements

touching the matter at issue that his testimony is quite unsatisfactory, and is not to be relied upon except as it is corroborated by other witnesses. Yung Suey, according to the testimony of Dr. J. W. Hill, who was acquainted with him, was a contractor, and was employed by Dr. Hill some 24 or 25 years ago, to do some work upon his farm near Portland. The defendant at that time went with his uncle on the farm, and remained there a while, but returned to Portland with him when the work had been completed. Yung Suey probably later engaged in the mercantile business on a small scale, but was surely not a merchant at the time he came to this country. The defendant lived with Yung Kuey a part of the time, and was probably living there when he entered the Hill Military Academy, which was about the year 1904; and Yung Kuey paid his tuition at the school. But it does not appear that the defendant came to this country with Yung Kuey. Indeed, from his own testimony, it would seem that Yung Kuey was in business in Portland at the time Yung Suey brought defendant to this country, because he says in effect that, on coming to Portland, he was brought to the store of Yung Kuey. Other reliable witnesses in Portland have testified to the defendant's presence in this country, indicating that he has been here more than 20 years.

I think there can be no doubt that the defendant came here when he was a young lad, perhaps at the age of 7 years, as he claims. The turning point in the case upon the evidence, to my mind, is whether Jew Sung Gwong came with a relative, namely, an uncle, who was of the merchant class; and, upon a consideration of the whole testimony, the controversy must be resolved against him.

By the act of May 6, 1882, the coming of Chinese laborers to the United States was suspended for the term of 10 years, and it was declared not to be lawful for any Chinese laborer to come from any foreign port or place within that time to the United States. Later statutes have continued the suspension. Section 6 of the act (Comp. St. 1913, § 4293) makes provision touching Chinese persons other than laborers, and specifies in what manner their coming may be certified. But such provision has no relation to the coming of Chinese laborers. By the act of May 5, 1892, it was declared to be the duty of all Chinese laborers within the United States at the time of the passage of the act, and who were entitled to remain in the United States, to apply for a certificate of residence to the collector of internal revenue for their respective districts, within one year after the passage of the act, and that any Chinese laborer within the United States who should neglect, fail, or refuse to comply with the provisions of the act, or who, after one year from the passage thereof, should be found within the jurisdiction of the United States without such certificate of residence, should be deemed and adjudged to be unlawfully within the United States. By a later act of November 3, 1893, this provision was extended for 6 months after its passage. This act contains an exception to the time of making application for a certificate of residence, which reads:

"Unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness, or other unavoidable cause he has been unable to procure his certificate, and to the satisfaction of said United States judge,

and by at least one credible witness other than Chinese, that he was a resident of the United States on the 5th of May, 1892; and if, upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost." Section 1 (Comp. St. 1913, § 4320).

[2] Under the authorities, it would seem that the defendant, having come to this country with his uncle and under his charge and protection, should be given the status of the uncle (United States v. Lee Chee, 224 Fed. 447, 140 C. C. A. 649); and, being entitled to such status, it would have been lawful for him to enter the United States without a certificate, providing the person with whom he came was of the merchant class (United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544).

[3] It has been authoritatively determined that the words "Chinese laborers," as used in the act, were intended to designate all immigration to the United States from China other than that of the privileged classes; merchants being included in such privileged classes. Lew Quen Wo v. United States, 184 Fed. 685, 106 C. C. A. 639. The defendant, however, having entered the United States with an uncle who was then a contractor, and not a merchant, and subsequent to the passage of the act of May 6, 1882, he would be unlawfully within the United States, and not entitled under Act May 5, 1892, § 6, or its amendment of November 3, 1893, to apply for a certificate of residence. Were it that he came to this country with an uncle who was a merchant, I should readily overlook the delay in his application for such a certificate, by reason of his youth when he entered, and even when the acts of 1892 and 1893 were passed, and grant him a certificate now. United States v. Hom Lim (D. C.) 214 Fed. 456; United States v. Lee Chee, supra. But no such case has been made upon the testimony.

It is the judgment of the court, therefore, that the defendant is not lawfully within the United States, and that he should be deported.